**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. ______________________

DPF ALTERNATIVES, LLC, a Colorado limited liability company,

Plaintiff,

v.

DET DIESEL EMISSION TECHNOLOGIES, LLC, a Texas limited liability company; and SYNERGY CATALYST, LLC, a Texas limited liability company,

Defendants.

---

**COMPLAINT**

---

Plaintiff DPF Alternatives, LLC ("Plaintiff" or "DPF Alternatives"), by and through its undersigned counsel, brings this action against defendant DET Diesel Emission Technologies, LLC ("DET") and Synergy Catalyst, LLC ("Synergy") (collectively "Defendants") and alleges, on knowledge and to its own actions and otherwise upon information and belief, as follows:

## PRELIMINARY STATEMENT

1. This action by DPF Alternatives seeks compensation and redress from Defendants' unlawful business practices that have harmed DPF Alternatives, directly and indirectly through DPF Alternatives' nationwide network of franchisees.

2. Beginning in 2021, Defendants heavily promoted and advertised that they had achieved patent protection on its technology and processes that it was offering to the public, and in particular, targeting DPF Alternatives and its franchisees.

3. In 2021 and continuing to today, Defendants have no issued patents, either through assignment or license, let alone any patent that covers its offered technology and processes.

4. Relying on these demonstrably false claims of patent ownership, DPF Alternatives and its franchisees entered into agreements to sell and offer Defendants' products and services on the express understanding that Defendants would aggressively enforce their (non-existent) patent rights, inducing DPF Alternatives' franchisees to overpay for unpatented materials and services at the risk of being "locked out" by Defendants.

5. This action seeks redress for Defendants' unlawful use of false marking and false advertising under the patent statute, the Lanham Act, the Sherman Act, and state tort laws.

## PARTIES

6. Plaintiff DPF Alternatives, LLC is a Colorado limited liability company with its principal place of business located at 1745 Shea Center Drive, 4th Floor, Highlands Ranch, CO 80129.

7. Upon information and belief, Defendant DET Diesel Emission Technologies, LLC is a Texas limited liability company with its principal place of business located at1122 West Bethel Road, #400, Coppell, TX 75019.

8. Upon information and belief, Defendant Synergy Catalyst, LLC is a Texas limited liability company with its principal place of business located at1122 West Bethel Road, #400, Coppell, TX 75019.

9. Upon information and belief, Defendants operate under and use the assumed name "Recore."

10. Upon information and belief, both Defendants are single-member LLC, with both Defendants operating under the same sole member and shareholder.

11. Upon information and belief, both Defendants use the same location, resources, and staff in the operation of their businesses.

12. Upon information and belief, Defendants have comingled their business operations together, including their business assets such as their use and holding themselves out as “Recore” businesses.

13. Defendants are alter egos of each other and/or constitute a single business enterprise.

## JURISDICTION

14. This court has jurisdiction over this action pursuant to 15 U.S.C. §§ 2 and 1121, 28 U.S.C. §§ 1331 and 1338(a) and (b), 35 USC § 292, and pursuant to the principles of supplemental jurisdiction under U.S.C. § 1367 for Colorado state and common law claims.

15. This court has jurisdiction over Defendants as they regularly transacted business in and with persons located in the State of Colorado, including directing its business to the State of Colorado and has purposely availed itself of the benefits of the State of Colorado.

16. Defendants also have contacts with the State of Colorado arising from the acts forming the basis of DPF Alternative’s claims.

## VENUE

17. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), in that a substantial part of the events or omissions giving rise to the claim occurred within the State of Colorado.

**BACKGROUND FACTS**

18. DPF Alternatives is a nationwide franchise that specializes in providing diesel particulate filter (DPF) services to the diesel industry.

19. DPF Alternatives was established in June of 2016, and launched its franchising system on October 11, 2016.

20. DPF Alternatives has established a strong presence and reputation within the industry, operating over 80 franchise locations nationwide.

21. Broadly speaking, a DPF is a device designed to remove diesel particulate matter or soot from the exhaust gas of a diesel engine.

22. The diesel particulate matter in the exhaust contains carbon compounds that have not burned because of local low temperatures where the diesel fuel is not fully atomized. These local low temperatures occur at the cylinder walls of the engine and at the surface of large droplets of fuel. In turn, the fuel can turn into a carbon deposit at these low temperature areas.

23. Modern diesel engines use a DPF as part of its exhaust system to capture carbon particles and then intermittently burn them by using fuel injected into the post-combustion injection into the exhaust stream or fuel injected into the exhaust stream before the filter. This prevents carbon buildup at the expense of wasting a small quantity of fuel.

24. This process of active regeneration of the DPF ensures proper filtration during day-to-day operation of the engine, however, particulate matter will still build up over time that requires forced regeneration or replacement of the DPF.

25. In particular, the DPFs installed on all diesel engines since 2007 need service by trained technicians and specialized equipment to perform forced regeneration or replacement of the DPF.

26. DPF Alternatives is well known for its ultrasonic diesel particulate filter cleaning process and warranty services of DPFs.

27. DPF Alternatives is the only national franchise brand to offer a trade-secret ultrasonic technology, along with two patent pending pieces of equipment, to completely recover and restore diesel emissions components in diesel engines manufactured in 2007 or later.

28. DPF Alternatives' ultrasonic technology allows safe recovery of these components that contain precious metals such as rhodium, platinum, and palladium to their Original Equipment (OE) specifications at very minimal costs. The recovery of these components is necessary to remove soot and ash that reduces air flow rates to unacceptable levels, causing the diesel engine's computer system to greatly reduce power output or shut down the engine completely. Permanently removing or altering these components is in violation of both federal and state laws for commercial vehicles and equipment.

29. The DPFs that DPF Alternatives services are generally cylindrically shaped with an inner cylindrical filter also referred to as the "core" of the DPF. DPF Alternatives can use its ultrasonic process to fully recover the core. However, if the core is damaged, the unit must either be replaced or "re-cored."

30. DPF Alternatives provides its franchisees with equipment, training, and other resources to provide DPF ALTERNATIVES services and products for servicing DPF units.

31. DPF Alternatives also maintains a list of approved vendors that its franchisees may work with to supplement the DPF ALTERNATIVES services and products offered at each location.

**DEFENDANTS' FALSE STATEMENTS ABOUT ITS RECORE BUSINESS**

32. On or about July 2021, multiple DPF Alternatives franchisees were contacted by Peter Lambe, a sales representative from "Recore," the trade name of Defendants.

33. Lambe was offering the DPF Alternatives equipment and services on behalf of Recore that he claimed was patented technology.

34. In particular, Defendants claimed that they had patented equipment and a method of "re-coring" a DPF.

35. Defendants claimed its patent technology and equipment could remove the core of the DPF, allowing for repair or replacement of the DPF.

36. Additionally, Defendants advertised at multiple trade shows where a number of DPF Alternatives' franchisees attended, including the Great American Trucking Show in Dallas, Texas in 2021, that its Recore products were patented.

37. Defendants also made a presentation for its Recore products and services that explicitly stated its equipment and processes were patented.

38. Per DPF Alternatives' Franchise Agreement, a DPF Alternative's franchisee sought permission to engage vendor services with Recore.

39. DPF Alternatives does not unreasonably withhold its permission to add vendors to its approved vendors list, provided that the vendor meets DPF Alternative standards for approved vendors. These standards include the requirements that the vendor must enhance the franchisee's and the brand's service capabilities and/or financial position, without causing the franchisee to violate the Franchise Agreement previously executed between Franchisor and Franchisee.

40. DPF Alternatives accepted "Recore" as a vendor for those franchisees who elected to participate.

41. Vendors to DPF Alternatives cannot offer products or services that compete with the DPF Alternatives' brand, nor can they interfere with the operation of the DPF Alternatives system.

42. DPF Alternatives approved Defendants as an approved vendor for its Recore equipment and technology upon the following representations and agreements made by Defendants in advance of the approval, including:

a. The Recore equipment and process were protected by an issued U.S. Patent;
b. The Recore equipment and process could service selective catalytic reduction (SCR) units, which are also part of the exhaust system;
c. DPF Alternatives' franchisees would receive a protected territory for its use of the Recore equipment and process;
d. DPF Alternatives' franchisees would receive access to national accounts for servicing equipment for Recore;
e. DPF Alternatives' franchisees relationship with Defendants would be that of a vendor and not a franchisee;
f. DPF Alternatives' franchisees would be permitted to return the Recore equipment and terminate the relationship with Defendants if the DPF Alternatives franchisee was not satisfied with the Recore equipment for a full refund of all amounts paid to Defendants;
g. DPF Alternatives' franchisees would have access to qualified, professional sales assistance if the franchisee is not generating enough sales to justify the purchase.

43. Based on these presentations and promises, DPF Alternatives approved Defendants as a vendor for the DPF Alternatives franchisees for Defendants' Recore equipment.

44. Shortly after the approval on DPF Alternatives' vendor list, Defendants used threats of its patent exclusivity to coerce DPF Alternatives' franchisees into purchasing Defendants' Recore products and services. For example, Defendants used statements such as: "If you don't buy Recore, you won't be able to get into the re-coring of diesel aftertreatment components business any other way because it's patented." Defendants also used threats of selling its Recore technology to nearby competitors of the DPF Alternatives franchisees with territorial exclusivity, which, if true, would substantially harm the DPF Alternatives franchisees.

45. Instead of providing the equipment as a vendor, Defendants used its false statements concerning the patented technology and equipment to induce the DPF Alternatives franchisees into signing long-term "master service agreements" and "financing agreements" before Defendants would provide the Recore equipment and technology.

46. These agreements between Defendants and the DPF Alternatives franchisees are instead illegal franchising agreements, as defined under federal law, as the agreements (a) granted the DPF Alternatives franchisees a license to the Recore trademarks; (b) exercised complete control over the DPF Alternatives franchisees' operation of the business; and (c) required initial payments well in excess of $500.

47. After approving the addition of Defendants' "Recore" to the DPF Alternatives vendor list, and after numerous DPF Alternatives franchisees had signed the franchising agreement with Defendants, DPF Alternatives learned that Defendants have no issued patents, let alone any patents that cover the Recore technology or equipment.

48. After the DPF Alternatives franchisees had signed the franchising agreement with Defendants, Defendants were unresponsive to DPF Alternatives franchisee phone calls concerning technical questions and order processing for materials and supplies.

49. After the DPF Alternatives franchisees had signed the franchising agreement with Defendants, Defendants were unresponsive to making sales calls in the DPF Alternative franchisee's markets of operation to supply them with the national accounts.

50. After the DPF Alternatives franchisees had signed the franchising agreement with Defendants, Defendants would publicly criticize and disparage the technology DPF Alternatives was using as a brand within the industry.

51. Defendants also promised that Defendants would make DPF Alternatives' cleaning equipment and process the only approved process to service Defendants' Recore DPFs. Defendants did not, and have not, made DPF Alternatives' cleaning equipment and process the only approved process to service Defendants' Recore DPFs.

52. After the DPF Alternatives franchisees had signed the franchising agreement with Defendants, Defendants further misrepresented to the franchisees that unless the franchisees purchased additional expensive cleaning equipment, Defendants would not allow them to offer or honor the Defendants' warranty on its Recore products.

53. As a result of these actions, the DPF Alternatives franchisees involved with Defendants were unable to conduct the duties they committed to in their Franchise Agreement with DPF Alternatives. The language in the Defendants' contract they signed, along with the criticism they received from Defendants regarding DPF Alternatives, and unresponsiveness of Defendants to supply them with technical help, supplies required to use the Defendants' equipment, and failure to provide national accounts all worked to greatly reduce the DPF Alternatives franchisee's ability to generate the revenue needed to sustain their Recore business.

54. Defendants' onerous terms of its franchising agreements with the DPF Alternatives franchisees, including excessive payments for the unpatented "Recore" equipment, jeopardized the solvency of many DPF Alternatives franchisees.

55. DPF Alternatives has been directly harmed through Defendants' actions.

56. DPF Alternatives franchisees have violated the terms of their franchising agreements with DPF Alternatives at the direction, insistence, and/or threats of Defendants.

57. DPF Alternatives has lost franchising revenue from its DPF Alternatives franchisees due to Defendants' direct interference between DPF Alternatives and its franchisees. Certain DPF Alternatives franchisees have been unable to make its franchising payments to DPF Alternatives due to threats made by Defendants to siphon money to Defendants instead of DPF Alternatives.

58. DPF Alternatives has been unable to transition its DPF Alternatives Franchisees to an alternative supplier of the same equipment due to the onerous franchising agreements Defendants coerced the DPF Alternatives Franchisees to enter. Another supplier of the "re-coring" equipment and technology is ready and available to supply DPF Alternatives Franchisees at prices that reflect the actual value of the equipment, rather than the value inflated by Defendants.

59. Additionally, Defendants have made direct threats to enforce their non-existent patent rights against DPF Alternatives Franchisees should any DPF Alternatives Franchisee even attempt to seek other suppliers for the re-coring equipment and technology.

60. Moreover, upon investigation into the purportedly "new" equipment and processes Defendants claim to have invented, the same equipment and method for removing the core of a DPF had been invented by another at least prior to 2014, who had publicly disclosed and offered it for sale at least as early as 2014.

61. In particular, Peter Lambe visited the inventor of technology, who showed Mr. Lambe how the technology and equipment worked.

62. Without the inventor's permission, Defendants proceeded to commercialize the technology and equipment that Peter Lambe had viewed.

63. Any purported patent rights for any employee, officer, or representative of Defendants would be barred by 35 U.S.C. § 102 for at least (1) not being the inventor of the technology; (2) being publicly disclosed and/or offered for sale more than one year prior to the filing date of any patent application.

## FIRST CLAIM FOR RELIEF
## FALSE MARKING UNDER 35 USC § 292

64. The allegations of the previous paragraphs are incorporated herein by reference.

65. Under 35 U.S.C. § 292, a party is liable for false marking when it "marks upon, or affixes to, or uses in advertising in connection with any unpatented article, the word "patent" or any word or number importing that the same is patented, for the purpose of deceiving the public.

66. Defendants sell and offer their "Recore" DPF re-coring equipment and technology to the public.

67. Defendants have publicly advertised that their "Recore" DPF re-coring equipment and technology was "patented."

68. At the time Defendants advertised that their "Recore" DPF re-coring equipment and technology was patented, Defendants knew that it had no issued or licensed patents, let alone a claim of an issued or licensed patent that would encompass its DPF re-coring equipment and technology.

69. Defendants falsely represented it had a patent with the intent of deceiving the public, and in particular DPF Alternatives, to convince DPF Alternatives to add Defendants to its approved vendor list and permit its DPF Alternatives franchisees to

enter into agreements with Defendants that have detrimentally affected DPF Alternatives' ability to compete in the marketplace.

70. DPF Alternatives has been harmed in the marketplace through Defendants' false representations.

**SECOND CLAIM FOR RELIEF**

**FALSE DESCRIPTIONS UNDER 15 USC § 1125 (LANHAM ACT § 43)**

71. The allegations of the previous paragraphs are incorporated herein by reference.

72. Defendants have made and continues to make false statements of fact in commercial advertisements and in commercial statements about its DPF re-coring equipment and technology.

73. The false statements of fact made by Defendants have actually deceived or have the tendency to deceive a substantial segment of the audience for Defendants' commercial advertisements and commercial statements.

74. Defendants' deception has been material, in that it is likely to influence the purchasing decision of members of the audience for the commercial advertisements and commercial statements.

75. Defendants caused the commercial advertisements and commercial statements containing false statements of fact to enter interstate commerce.

76. DPF Alternatives has been injured as a result of the false statements made by Defendants.

77. Defendants have acted in bad faith in making its false statements of fact in commercial advertisements and commercial statements about its DPF re-coring equipment and technology.

78. Pursuant to 35 U.S.C. § 1125(a)(1), Defendants are liable to DPF Alternatives for the false statements of fact.

79. Pursuant to 35 U.S.C. § 1117, DPF Alternatives is entitled to an award of Defendants' profits, damages sustained by DPF Alternatives, and the costs of this action.

**THIRD CLAIM FOR RELIEF**
**MONOPOLIZATION OF TRADE UNDER 15 USC § 2 (SHERMAN ACT § 2)**

80. The allegations of the previous paragraphs are incorporated herein by reference.

81. Defendants have excluded competitors from the DPF service market by falsely asserting that the DPF re-coring equipment and technology it manufactures and sells are covered are patented technology.

82. Defendants' false advertisements and statements about its patent rights have induced DPF servicers and servicer suppliers, and in particular DPF Alternatives and DPF Alternatives' franchisees that Defendants' DPF re-coring equipment and technology was a protected by issued U.S. Patents and that it was the only supplier of the DPF re-coring equipment and technology.

83. Defendants have possessed monopoly power in the distinct submarket for DPF re-coring equipment, or there has been a dangerous probability of Defendants achieving monopoly power in the distinct submarket for DPF re-coring equipment and other economically relevant markets.

84. Defendant have acted with specific intent to monopolize the distinct submarket for DPF re-coring equipment and other economically relevant markets.

85. Defendants have engaged in predatory or anticompetitive conduct in the distinct submarket for DPF re-coring equipment and other economically relevant markets.

86. DPF Alternatives has suffered antitrust damages as a result of Defendants' monopolistic actions.

87. Pursuant to 15 U.S.C. § 2, Defendants are liable to DPF Alternatives for Defendants' monopolization or attempted monopolization of the distinct submarket for DPF re-coring equipment and other economically relevant markets.

88. Pursuant to 15 U.S.C. § 15, DPF Alternatives is entitled to an award of threefold the damages it sustained, and the cost of suit, including a reasonable attorney's fees for Defendants' monopolization or attempted monopolization of the distinct submarket for DPF re-coring equipment and other economically relevant markets.

## FOURTH CLAIM FOR RELIEF
## TORTIOUS INTERFERENCE WITH CONTRACT

89. The allegations of the previous paragraphs are incorporated herein by reference.

90. At all relevant times, DPF Alternatives had, has, and continues to have valid contracts with its franchisees in the income derived from the franchising fees and the revenues generated by its franchisees under the terms of its franchising agreements.

91. As part of the negotiation to become an approved vendor for DPF Alternatives, Defendants had knowledge of these franchising agreements between DPF Alternatives and its franchisees.

92. Defendants intentionally and improperly interfered with these contracts by inducing and/or coercing DPF Alternatives' franchisees to fail to perform terms of their franchising agreements with DPF Alternatives and failing to maintain the high-quality service required to be a DPF Alternatives franchisee as a direct result of Defendants' interference with the franchisees.

93. DPF Alternatives has suffered and will continue to suffer damages as a result of Defendants' interference with DPF Alternative's contracts with its franchisees.

94. Defendants' wrongful conduct was willful, deliberate, malicious, and intended to injure DPF Alternatives. Accordingly, DPF Alternatives is also entitled to punitive damages in amounts yet to be determined.

## JURY DEMAND

Plaintiff seeks a trial by jury on all matters triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff DPF Alternatives prays judgement against Defendants, jointly and severally, as follows:

A. That Defendants are held to have falsely marked upon, or falsely affixed to, unpatented articles and processes sold and offered by Defendants the word "patent" or other words importing that the articles or processes are patented, for the purpose of deceiving the public;

B. That Defendants are held to have falsely used in advertising, in connection with unpatented articles and processes sold and offered by Defendants, the word "patent" or other words that the articles or processes are patented, for the purpose of deceiving the public;

C. That Defendants are held to have possessed unlawful monopoly power in the distinct submarket for DPF re-coring equipment and other economically relevant markets, or that there has been a dangerous probability Defendants achieving unlawful monopoly power in the distinct submarket for DPF re-coring equipment and other economically relevant markets;

D. Award DPF Alternatives its damages sustained from Defendants' unlawful patent marking, false advertising, and unlawful monopoly power in amount determined at trial;

E. Award DPF Alternatives treble damages it sustained, and the cost of suit, including reasonable attorneys' fees;

F. Award DPF Alternatives punitive damages as provided under Colorado law;

G. Entry of an injunction enjoining Defendants, its officers, directors, employees, agents, licensees, subsidiaries and affiliated companies, successors and assigns, and any and all persons in active concert or participation with any of them, from:

  a. Engaging in any conduct suggesting or tending to suggest that any product or service promoted, advertised, performed, or offered for sale by Defendants is protected by a valid and subsisting patent; and

  b. Conveying the impression to the public through communications, displays, advertising, packaging or otherwise that any product or service offered by Defendants is protected by a valid and subsisting patent;

H. Award any other legal or equitable remedies to which DPF Alternatives may be entitled, including all remedies provided for in 15 U.S.C. § 1117(a) and Colorado state law, and under any other Colorado state statutory or common law;

I. Award DPF Alternatives interest and post-judgment interest; and

J. Award such other and further relief as this Court deems just and proper.

Respectfully submitted this 30th day of October, 2023.

By: s/Michael B. Marion
**Michael B. Marion** (AZ Bar No. 035627)
BYCER & MARION
7220 N. 16th Street, Suite H
Phoenix, Arizona 85020
Tel: (602) 944-2277
Email: michael@bycermarion.com
*Attorney for Plaintiff DPF Alternatives, LLC*