**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **DPF ALTERNATIVES LLC,** | § | |
| | § | |
| **Plaintiff/Counterclaim Defendant,** | § | |
| | § | |
| **v.** | § | |
| | § | **Civil Action No. 3:24-cv-01953-B** |
| **DET DIESEL EMISSION TECHNOLOGIES, LLC,** | § | |
| | § | |
| **Defendant/Counterclaim Plaintiff/Third Party Counterclaim Plaintiff,** | § | |
| | § | |
| **SYNERGY CATALYST, LLC,** | § | |
| | § | |
| **Defendant,** | § | |
| | § | |
| **COLLATERAL RESOURCES, LLC d/b/a DPF ALTERNATIVES GREELEY, CO; DPF ALTERNATIVES GRAND JUNCTION, CO; DPF ALTERNATIVES IOWA LLC; LUSTER DUSTERS, LLC d/b/a DPF ALTERNATIVES OF SOUTHERN KENTUCKY; DPF ALTERNATIVES CENTRAL & MIDWEST OHIO; DPF ALTERNATIVES, LLC d/b/a DPF ALTERNATIVES AUBURN, WA; DPF CLEAN TECHNOLOGIES, INC.; DPF ALTERNATIVES OF SOUTHERN INDIANA LLC; and DPF ALTERNATIVES WEST HOUSTON;** | § | |
| | § | |
| **Third Party Counterclaim Defendants.** | § | |

**DEFENDANTS' FIRST AMENDED ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT AND COUNTERCLAIMS AND THIRD PARTY COUNTERCLAIMS**

Defendants DET Diesel Emission Technologies, LLC ("DET") and Synergy Catalyst, LLC ("Synergy") (collectively "Defendants") file this First Amended Answer and Affirmative Defenses

to Plaintiffs' Amended Complaint (Dkt. 88) and Counterclaims and Third Party Counterclaims, and would respectfully show the Court as follows:

## PRELIMINARY STATEMENT

1. Defendants deny the allegations of this Paragraph.

2. Defendants deny the allegations of this Paragraph.

3. Defendants deny the allegations of this Paragraph.

4. Defendants deny the allegations of this Paragraph.

5. Defendants deny the allegations of this Paragraph.

6. Defendants admit this Paragraph describes the nature of Plaintiff's claims. Defendants deny any remaining allegations of this Paragraph.

7. Defendants admit the allegations of this Paragraph.

8. Defendants deny the allegations of this Paragraph.

9. Defendants admit that Peter Lambe previously met the individual referenced in this Paragraph. The remaining allegations of this Paragraph of this denied.

10. Defendants deny the allegations of this Paragraph.

11. Defendants deny the allegations of this Paragraph.

## THE PARTIES

12. Defendants admit the allegations of this Paragraph.

13. Defendants lack sufficient information to admit or deny the allegations of this Paragraph, and accordingly deny same.

14. Defendants lack sufficient information to admit or deny the allegations of this Paragraph, and accordingly deny same.

15. Defendants admit the allegations of this Paragraph.

16. Defendants admit the allegations of this Paragraph.

17. Defendants admit that "Recore" is a name utilized by DET's business. The remaining allegations of this Paragraph are denied.

18. Defendants admit the allegations of this Paragraph.

19. Defendants admit that they have the same location. The remaining allegations of this Paragraph are denied.

20. Defendants deny the allegations of this Paragraph.

21. Defendants deny the allegations of this Paragraph.

## JURISDICTION

22. Defendants admit the United States District Court for the Northern District of Texas, Dallas Division has subject matter and personal jurisdiction over the parties and claims in this lawsuit. The remaining allegations of this Paragraph are denied.

23. Defendants admit the United States District Court for the Northern District of Texas, Dallas Division has subject matter and personal jurisdiction over the parties and claims in this lawsuit. The remaining allegations of this Paragraph are denied.

24. Defendants deny the allegations of this Paragraph.

25. Defendants admit the allegations of this Paragraph.

26. Defendants admit the allegations of this Paragraph.

## VENUE

27. Defendants admit that venue is proper in the United States District Court for the Northern District of Texas, Dallas Division. The remaining allegations of this Paragraph are denied.

## BACKGROUND FACTS

28. Defendants admit that DPF Alternatives performs work in providing services in the diesel industry. Defendants lack sufficient information to admit or deny the remaining allegations of this Paragraph, and accordingly deny same.

29. Defendants lack sufficient information to admit or deny the allegations of this Paragraph, and accordingly deny same.

30. Defendants lack sufficient information to admit or deny the allegations of this Paragraph, and accordingly deny same.

31. Defendants deny the allegations of this Paragraph.

32. Defendants admit the allegations of this Paragraph are one example of how the technology in question functions. To the extent a further response to the allegations of this Paragraph is required, they are denied.

33. Defendants admit the allegations of this Paragraph are one example of how the technology in question functions. To the extent a further response to the allegations of this Paragraph is required, they are denied.

34. Defendants admit the allegations of this Paragraph are one example of how the technology in question functions. To the extent a further response to the allegations of this Paragraph is required, they are denied.

35. Defendants admit the allegations of this Paragraph are one example of how the technology in question functions. To the extent a further response to the allegations of this Paragraph is required, they are denied.

36. Defendants lack sufficient information to admit or deny the allegations of this Paragraph, and accordingly deny same.

37. Defendants lack sufficient information to admit or deny the allegations of this Paragraph, and accordingly deny same.

38. Defendants lack sufficient information to admit or deny the allegations of this Paragraph, and accordingly deny same.

39. Defendants admit that if the core of a DPF is damaged, the unit must be replaced or re-cored. Defendants lack sufficient information to admit or deny the remaining allegations of this Paragraph, and accordingly deny same.

40. Defendants lack sufficient information to admit or deny the allegations of this Paragraph, and accordingly deny same.

41. Defendants lack sufficient information to admit or deny the allegations of this Paragraph, and accordingly deny same.

**DEFENDANTS' FALSE STATEMENTS ABOUT ITS RECORE BUSINESS [DENIED]**

42. Defendants admit the allegations of this Paragraph.

43. Defendants deny the allegations of this Paragraph.

44. Defendants deny the allegations of this Paragraph.

45. Defendants admit that DET offers technology for removal of the core of the DPF for replacement or repair. Defendants deny the remaining allegations of this Paragraph.

46. Defendants deny the allegations of this Paragraph.

47. Defendants deny the allegations of this Paragraph.

48. Defendants lack sufficient information to admit or deny the allegations of this Paragraph, and accordingly deny same.

49. Defendants lack sufficient information to admit or deny the allegations of this Paragraph, and accordingly deny same.

50. Defendants lack sufficient information to admit or deny the allegations of this Paragraph, and accordingly deny same.

51. Defendants lack sufficient information to admit or deny the allegations of this Paragraph, and accordingly deny same.

52. Defendants deny the allegations of this Paragraph, and all corresponding subparts.

53. Defendants deny the allegations of this Paragraph.

54. Defendants deny the allegations of this Paragraph.

55. Defendants deny the allegations of this Paragraph.

56. Defendants deny the allegations of this Paragraph.

57. Defendants deny the allegations of this Paragraph.

58. Defendants deny the allegations of this Paragraph.

59. Defendants deny the allegations of this Paragraph.

60. Defendants deny the allegations of this Paragraph.

61. Defendants deny the allegations of this Paragraph.

62. Defendants deny the allegations of this Paragraph.

63. Defendants deny the allegations of this Paragraph.

64. Defendants deny the allegations of this Paragraph.

65. Defendants deny the allegations of this Paragraph.

66. Defendants deny the allegations of this Paragraph.

67. Defendants deny the allegations of this Paragraph.

68. Defendants deny the allegations of this Paragraph.

69. Defendants deny the allegations of this Paragraph.

70. Defendants deny the allegations of this Paragraph.

71. Defendants admit that Peter Lambe previously met the individual referenced in this Paragraph. The remaining allegations of this Paragraph of this denied.

72. Defendants deny the allegations of this Paragraph.

73. Defendants deny the allegations of this Paragraph.

74. The allegations of this Paragraph constitute a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations of this Paragraph.

75. Defendants lack sufficient information to admit or deny the allegations of this Paragraph, and accordingly deny same.

76. Defendants lack sufficient information to admit or deny the allegations of this Paragraph, and accordingly deny same.

77. Defendants lack sufficient information to admit or deny the allegations of this Paragraph, and accordingly deny same.

78. Defendants lack sufficient information to admit or deny the allegations of this Paragraph, and accordingly deny same.

79. Defendants lack sufficient information to admit or deny the allegations of this Paragraph, and accordingly deny same.

## FIRST CLAIM FOR RELIEF
## FALSE MARKING UNDER 35 USC § 292
## (DPF Alternatives against Defendants)

80. Defendants incorporate their responses to the foregoing Paragraphs by reference.

81. The allegations of this Paragraph constitute a legal conclusion or statement of law to which no response is required. To the extent a response is required, Defendants deny the allegations of this Paragraph.

82. Defendants admit that they offer licenses for their equipment and technology. The remaining allegations of this Paragraph are denied.

83. Defendants deny the allegations of this Paragraph.

84. Defendants deny the allegations of this Paragraph.

85. Defendants deny the allegations of this Paragraph.

86. Defendants deny the allegations of this Paragraph.

**SECOND CLAIM FOR RELIEF**
**FALSE DESCRIPTIONS UNDER 15 USC § 1125 (LANHAM ACT § 43)**
**(DPF Alternatives against Defendants)**

87. Defendants incorporate their responses to the foregoing Paragraphs by reference.

88. Defendants deny the allegations of this Paragraph.

89. Defendants deny the allegations of this Paragraph.

90. Defendants deny the allegations of this Paragraph.

91. Defendants deny the allegations of this Paragraph.

92. Defendants deny the allegations of this Paragraph.

93. Defendants deny the allegations of this Paragraph.

94. Defendants deny the allegations of this Paragraph.

95. Defendants deny the allegations of this Paragraph.

**THIRD CLAIM FOR RELIEF**
**MONOPOLIZATION OF TRADE UNDER 15 USC § 2 (SHERMAN ACT § 2)**
**(All Plaintiffs against Defendants)**

96. Defendants incorporate their responses to the foregoing Paragraphs by reference.

97. Defendants deny the allegations of this Paragraph.

98. Defendants deny the allegations of this Paragraph.

99. Defendants deny the allegations of this Paragraph.

100. Defendants deny the allegations of this Paragraph.

101. Defendants deny the allegations of this Paragraph.

102. Defendants deny the allegations of this Paragraph.

103. Defendants deny the allegations of this Paragraph.

104. Defendants deny the allegations of this Paragraph.

**FOURTH CLAIM FOR RELIEF**
**TORTIOUS INTERFERENCE WITH CONTRACT**

**(DPF Alternatives against Defendants)**

105. Defendants incorporate their responses to the foregoing Paragraphs by reference.

106. Defendants lack sufficient information to admit or deny the allegations of this Paragraph, and accordingly deny same.

107. Defendants deny the allegations of this Paragraph.

108. Defendants deny the allegations of this Paragraph.

109. Defendants deny the allegations of this Paragraph.

110. Defendants deny the allegations of this Paragraph.

**FIFTH CLAIM FOR RELIEF**
**VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT (DTPA) UNDER TEX. BUS. & COM. CODE § 17.46(b)**
**(DPF Alternatives against Defendants)**

111. Defendants incorporate their responses to the foregoing Paragraphs by reference.

112. Defendants deny the allegations of this Paragraph.

113. Defendants deny the allegations of this Paragraph.

114. Defendants deny the allegations of this Paragraph.

115. Defendants deny the allegations of this Paragraph.

116. Defendants deny the allegations of this Paragraph.

117. Defendants deny the allegations of this Paragraph.

118. Defendants deny the allegations of this Paragraph.

119. Defendants deny the allegations of this Paragraph.

120. Defendants deny the allegations of this Paragraph.

121. Defendants deny the allegations of this Paragraph.

**SIXTH CLAIM FOR RELIEF**
**DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '920 PATENT**
**(All Plaintiffs against Defendants)**

122. Defendants incorporate their responses to the foregoing Paragraphs by reference.

123. Defendants deny that Figure 6Q illustrates “curtained” claim elements of the ‘920 Patent as alleged in this Paragraph.

124. Defendants deny the allegation of this Paragraph as it is an incomplete recitation of an element of Claim 1 of the ‘920 Patent.

125. Defendants deny the allegation of this Paragraph as it is an incomplete recitation of an element of Claim 1 of the ‘920 Patent.

126. Defendants deny the allegation of this Paragraph as it misstates the wording of Claim 1 of the ‘920 Patent.

127. Defendants deny the allegations of this Paragraph.

128. Defendants lack sufficient information to admit or deny the allegations of this Paragraph, and accordingly deny same.

129. Defendants deny the allegations of this Paragraph.

130. Defendants deny the allegations of this Paragraph.

131. Defendants deny the allegations of this Paragraph.

132. Defendants deny the allegations of this Paragraph.

**SEVENTH CLAIM FOR RELIEF**
**DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE ‘920 PATENT**
**(All Plaintiffs against Defendants)**

133. Defendants incorporate their responses to the foregoing Paragraphs by reference.

134. Defendants deny the allegations of this Paragraph.

135. Defendants deny the allegations of this Paragraph.

136. Defendants deny the allegations of this Paragraph.

137. Defendants deny the allegations of this Paragraph.

**EIGHTH CLAIM FOR RELIEF**
**DECLARATORY JUDGMENT OF UNENFORCEABILITY FOR INEQUITABLE CONDUCT OF THE ‘920 PATENT**
**(All Plaintiffs against Defendants)**

138. Defendants incorporate their responses to the foregoing Paragraphs by reference.

139. Defendants admit the allegations of this Paragraph.

140. Defendants admit the allegations of this Paragraph.

141. Defendants deny the allegations of this Paragraph.

142. Defendants deny the allegations of this Paragraph.

143. Defendants deny the allegations of this Paragraph.

144. Defendants deny the allegations of this Paragraph.

## JURY DEMAND

The allegations of this Paragraph do not necessitate a response. However, to the extent a response is required, Defendants demand a trial by jury on all issues so triable.

## REQUEST FOR RELIEF

Defendants deny Plaintiffs are entitled to the relief requested in its Amended Complaint.

## AFFIRMATIVE DEFENSES

Defendants allege the following affirmative defenses and allegations:

1. Plaintiffs fail to state a claim upon which relief may be granted.

2. Plaintiffs have failed to mitigate its damages by failing to take actions to reduce its alleged harm in a manner that would have obviated the economic losses it now claims.

3. Defendants plead the limitations on interest on any judgment provided by Tex. Fin. Code § 304.001 *et seq*.

4. Plaintiffs' claims for punitive or exemplary damages are controlled and limited by the provisions of Texas Civil Practice & Remedies Code §41.008.

5. Plaintiffs' claims for punitive or exemplary damages, if any, are controlled and limited by the provisions of the due process clause of the Texas and United States Constitutions, which prevent the award of grossly excessive punitive damages.

6. Plaintiffs' state law claims are barred in whole or in part by federal preemption.

7. Plaintiffs' claims are barred in whole or in part by its ratification of Defendants' actions.

8. Plaintiffs have failed to allege and cannot prove that Defendants had sufficient market share and/or monopoly power in the relevant market or sub-market to support a claim under Section 2 of the Sherman Act.

9. To the extent shown, any representations made by Defendants regarding the nature of the intellectual property rights covering the products, technologies, or processes in question were not done with the intent to deceive the public.

10. Defendants plead reliance upon advice of counsel as to false marking and/or false advertising.

11. Defendants made all representations about their intellectual property rights in good faith.

12. Plaintiffs cannot allege or demonstrate a sufficient competitive market for the technology to prove their claims.

13. Without admitting false representations were made, Plaintiffs' claims are barred because it had knowledge of the truth or falsity of the statements upon which it brings claims.

14. Plaintiffs' own actions or omissions caused or contributed to its injury.

15. To the extent applicable, Defendants request that liability be apportioned amongst those at fault, in accordance with Chapter 33 of the Texas Civil Practice and Remedies Code.

16. Defendants plead the affirmative defense of justification as to tortious interference.

17. Defendants plead the affirmative defense of privilege as to tortious interference.

18. The statements or representations forming the basis of Plaintiffs' claims were mere puffery that is not actionable.

19. The content of the statements or representations forming the basis of Plaintiffs' claims are subject to substantiation rendering them not actionable.

20. Plaintiffs' damages are subject to offset.

21. There is a procompetitive justification for Defendants' conduct.

22. Plaintiffs lack standing to bring antitrust claims because it does not allege a type of injury that the antitrust laws were intended to prevent.

23. The claims under the DTPA against Defendants must fail because the claimant is not a "consumer" as defined by Texas Business and Commerce Code § 17.45(4).

24. The claims under the DTPA against Defendants must fail because the claimant is a "business consumer" as defined by Texas Business and Commerce Code § 17.45(4).

25. The claims under the DTPA against Defendants are subject to the exemption of Texas Business and Commerce Code § 17.49(f).

26. The claims under the DTPA against Defendants are subject to the exemption of Texas Business and Commerce Code § 17.49(g).

27. The claims under the DTPA against Defendants are barred by the applicable statute of limitations.

28. Defendants reserve the right to assert any other additional affirmative defenses as become apparent through the course of discovery or otherwise as permitted by the Federal Rules of Civil Procedure.

**ATTORNEYS' FEES**

Because the claim under the DTPA asserted in the Amended Complaint is groundless in fact or law and/or brought in bad faith, Defendants are entitled to an award of attorneys' fees and court costs under Texas Business and Commerce Code § 17.50(c).

## DEMAND FOR JURY TRIAL

Defendants demand a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Defendants request that Plaintiff take nothing by way of its Complaint, for costs of court, and attorneys' fees and prejudgment and post-judgment interest thereon, and for all other relief deemed just and proper.

## COUNTERCLAIMS AND THIRD PARTY COUNTERCLAIMS

Defendant/Counterclaim Plaintiff DET Diesel Emission Technologies, LLC asserts the following Counterclaims and Third-Party Counterclaims:

### Parties, Jurisdiction and Venue

1. Defendant/Counterclaim Plaintiff/Third Party Counterclaim Plaintiff DET Diesel Emission Technologies, LLC ("DET") is a Texas limited liability company located in Coppell, Texas.

2. Plaintiff/Counterclaim Defendant DPF Alternatives LLC ("DPF") is a Colorado limited liability company located in Highlands Ranch, Colorado. It has entered an appearance in this matter. DPF is subject to the personal jurisdiction of this Court because it has filed this suit which has been transferred to Texas, and is subject to personal jurisdiction in Texas due to its dealings with DET in Texas and acts of infringement committed in Texas.

3. Third Party Counterclaim Defendant Collateral Resources, LLC is a Colorado limited liability company or general partnership affiliated with Justin Strohmeyer that operates

under the name "DPF Alternatives Greeley", with a location for service at 315 First Street, Box 7, Pierce, CO 80650, where it may be served.

4. Third Party Counterclaim Defendant DPF Alternatives Grand Junction, CO is a business entity affiliated with Kelly Baier located at 510 Fruitvale Court, #C, Grand Junction, CO 81504, at which it may be served.

5. Third Party Counterclaim Defendant DPF Alternatives Iowa LLC is an Iowa limited liability company affiliated with Jonathan Laverty and Anthony Hodges, which operates under the name "DPF Alternatives Des Moines, IA", and is located at 2004 Hempstead Drive, Unit D, Pella, IA 50219. It may be served by way of its registered agent, Jonathan Laverty, at 315 Fairview Drive, Oskaloosa, IA 52577.

6. Third Party Counterclaim Defendant Luster Dusters, LLC is a Kentucky limited liability company affiliated with Tyson Phillips, which operates under the name "DPF Alternatives of Southern Kentucky", and is located at 588 Lee Carter Road, Austin, KY 42123. It may be served by way of its registered agent, Tyson Phillips, 1249 Pleasant Point Church Road, Austin, KY 42123.

7. Third Party Counterclaim Defendant DPF Alternatives Central & Mid West Ohio is a business entity or sole proprietorship affiliated with Randy Covault and Justin Covault, located at 144 South Miami Avenue, Bradford, OH 45308, where it may be served.

8. Third Party Counterclaim Defendant DPF Alternatives LLC, which does business under the name "DPF Alternatives Auburn, WA" and is affiliated with Kevin Serapin, is a Washington limited liability company located at 3040 B Street NW, Suite 15, Auburn, WA 98001, where it may be served.

9. Third Party Counterclaim Defendant DPF Clean Technologies, Inc. is a Georgia corporation affiliated with Joshua Troseth, located at 140 Auburn Park Drive, Auburn, GA 30011, where it may be served.

10. Third Party Counterclaim Defendant DPF Alternatives of Southern Indiana LLC is an Indiana limited liability company affiliated with Brandon Buller and Tim Buller, which is located at 8499 W US Hwy 150, Hardinsburg, IN 47125, where it may be served.

11. Third Party Counterclaim Defendant DPF Alternatives West Houston is a business entity or sole proprietorship affiliated with Jenna and Keith Lindermann located at 2121 Brittmoore Road, Suite 280, Houston, TX 77043, where it may be served.

12. The entities listed in Paragraphs 3 to 11 above are all franchisees of DPF, the Plaintiff in the matter in which these Counterclaims and Third Party Counterclaims are filed, and are hereafter referred to collectively as the "DPF Franchisees".

13. The claims brought against DPF and the DPF Franchisees are asserted against these parties jointly, severally, or in the alternative with respect to or arising out of the same series of transactions or occurrences relating to the infringing behavior, and there are questions of fact common to all said parties that will arise in this action, particularly in light of the fact that the DPF Franchisees are utilizing infringing technology that they are using subject to their agreements with DPF as franchisees. All of these parties can therefore be joined in this action under 35 U.S.C. § 299(a).

14. The Court has subject matter jurisdiction over this matter based upon federal question jurisdiction under 28 U.S.C. § 1331 because this case involves claims under federal statutes.

15. The Court also has subject matter jurisdiction over this matter based upon federal question jurisdiction under 28 U.S.C. § 1338 because this case involves claims under patent statutes of the United States.

16. As to state law claims such as the ones brought as part of these Counterclaims, the Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

17. Venue is proper in the Northern District of Texas based on the propriety of venue as to DPF's claims against DET that are already pending, DET being located in this venue, as well as under 28 U.S.C. §§ 1391(b)-(c) and 28 U.S.C. § 1400(b).

## **Factual Background**

### *DET's Business*

18. DET is a business based in Coppell, Texas. It and its personnel have spent over 20 years manufacturing equipment and products for use in the diesel engine industry. Specifically, the purpose of DET's products and methods is to allow for the replacement and/or installation of diesel particulate filters, which remove diesel particulate matter from the exhaust gas of a diesel engine.

19. DET has developed its equipment and processes for this purpose over the preceding two decades. Throughout that time period, DET did not disseminate its equipment or processes or the associated intellectual property to the public or individuals outside of DET.

20. In 2019, DET began developing new processes and equipment, including presses and additional components for use therewith, designed for DET's customers to use in "recoring" existing emission control housings within diesel engines' diesel particulate filters. Christened "RECORE™", these processes and designs uniquely require the removal or extraction of an existing emission control core and allow the installation of a separate functioning core.

21. As developed and designed by DET, RECORE™ allows for the quick removal of an old core within the diesel particulate filter and the insertion of a new core into the housing, with much reduced effort, equipment, and necessary inventory.

22. RECORE™ kits can be utilized across many parts supplied by original equipment manufacturers, and their availability substantially reduces the inventory requirements of a repair facility.

23. DET undertook substantial efforts to develop, protect, and ensure the confidentiality of the methods, training, and data associated with the RECORE™ technology, including the associated services, methods, training materials, video instructions, and other materials. This included ensuring that licensees and potential business partners signed confidentiality agreements, expending strenuous efforts to inform users of the need to protect such trade secrets, and protecting the information with password protections.

24. As part of its development of its technology and methods, DET established a password-protected online portal that its licensees could access, at substantial effort and expense. This portal permitted restricted access, including password protection, to *only* those entities or persons that entered into Master Services Agreements with DET as licensees, and had measures in place to protect the information therein, which included training, videos, databases, ongoing updated research data, product modifications, order processing utilizations, and methods that could be utilized to properly function and operate the RECORE™ press and technology developed by DET. This information, together with the database and portal, constitute DET's trade secrets relating to the RECORE™ technology.

*The '920 Patent*

25. The RECORE™ technology is the subject of a patent issued by the United States Patent and Trademark Office, U.S. Patent No. 12,048,920 ("the '920 Patent").

26. DET is the owner of the entire right, title and interest in the '920 Patent, entitled "System and Process for Replacing a Core of Diesel Emission Control Device," which was duly and lawfully issued by the United States Patent and Trademark Office on July 30, 2024. A true and correct copy of the '920 Patent is attached as Exhibit A and made a part hereof.

27. The '920 Patent lists Mike VanPatten and Pete Lambe as inventors.

28. The '920 Patent has not been licensed to DPF.

*DPF Alternatives LLC, its Franchisees, and "New Core"*

29. Beginning in 2021, a group of entities and individuals fronted by DPF, a Colorado-based entity, began communicating and negotiating with DET about agreements to license DET's RECORE™ equipment and process, and for DET to become an approved vendor for DPF's franchisees.

30. As part of these efforts, certain of these entities, including DPF, signed Confidentiality Agreements with DET, which included several provisions requiring the signatories to preserve the confidentiality and not disseminate technology affiliated with those efforts beyond authorized individuals and entities.

31. In 2021 and 2022, a number of DPF's franchisees ultimately agreed to license DET's RECORE™ equipment, methods, products, and process, and signed Master Services Agreements with DET, which allowed them access to utilize DET's equipment, methods, products, and process.

32. The Master Services Agreements ("MSA") and Confidentiality Agreements established various provisions that the signatory was required to abide by in the use of DET's RECORE™ equipment, methods, products, and processes. By way of the MSAs, DET established a business relationship with the signatory to allow it to use DET's equipment, methods, products,

and process for the recoring and resale of diesel emission control devices using new cores. No MSA was entered into between DET and DPF.

33. However, DPF had its own agreements and arrangements with its franchisees, which included terms that allowed DPF to have access to the systems and information of these entities, including information that was the subject of confidentiality obligations contained in the MSAs between DET and these entities. This confidential information included access to DET's online portal and methods to access it. DPF took advantage of these agreements with its franchisees to gain unlawful access to DET's confidential and proprietary information. DPF's franchisees with access to information about RECORE™ ultimately obtained that information and placed it in DPF's possession, disclosing DET's proprietary equipment, methods, products, and processes outside of those individuals and entities authorized by DET under the agreements, without DET's consent. Specifically, these equipment, methods, products, and processes, along with affiliated information, were conveyed by those with access to DET's confidential information to DPF, which intentionally and deliberately took advantage of this unlawful conduct to create a derivative technology and competing method it called "New Core". In this way, DPF copied DET's data, trade secrets, and information that DPF knew to be DET's confidential information, to market a competing method under the "New Core" moniker.

34. DPF thus unfairly began offering equipment, methods, products, and processes based on DET's intellectual property, trade secrets and confidential and proprietary information, in an effort to steal DET's business, customers, and opportunities.

35. These actions constitute infringement of DET's intellectual property rights in a willful manner under 35 U.S.C § 271 by DPF, and any franchisee of DPF that is utilizing the infringing "New Core" method and technology, including the DPF Franchisees named herein.

36. These actions also constitute misappropriation of DET's trade secrets, entitling DET to damages and equitable relief as provided by the parties' contracts and the relevant statutes, including Chapter 134A of the Texas Civil Practice and Remedies Code, also known as the Texas Uniform Trade Secrets Act, and 18 U.S.C. § 1836, also known as the Defend Trade Secrets Act.

37. The DPF Franchisees named herein are all utilizing the RECORE™ technology that is the subject of the '920 Patent, through their relationship with DPF. Thus, like DPF, the DPF Franchisees are infringing upon DET's rights under the '920 Patent.

## COUNT I – DIRECT INFRINGEMENT OF U.S. PATENT NO. 12,048,920

***As to Counterclaim Defendant DPF Alternatives, LLC and Third Party Counterclaim Defendants DPF Franchisees***

38. DET repeats and re-alleges each and every allegation of the foregoing Paragraphs.

39. As noted above, DET is the owner of the entire right, title and interest in the '920 Patent, entitled "System and Process for Replacing a Core of Diesel Emission Control Device," which was duly and lawfully issued by the United States Patent and Trademark Office on July 30, 2024. A true and correct copy of the '920 Patent is attached as Exhibit A and made a part hereof. The '920 Patent has not been licensed to DPF.

40. DPF operates a business that provides, among other services, cleaning and replacement of diesel particulate filter (DPF) units. (*See* https://dpfalternatives.com/company/about-us). DPF partners with its franchisees to offer its services to customers. (Dkt. 1 at ¶ 27).

41. DPF provides its franchisees with equipment, training, and other resources to enable its franchisees to service DPF units.

42. One of the services provided by DPF and its franchisees is to replace the cores of DPF units. The process of replacing the core of DPF unit is sometimes referred to as "re-coring". (Dkt. 1 at ¶ 29).

43. DPF and its franchisees market and use a product called New Core ("the Accused Product") that is used to remove and replace cores of DPF units (*see* https://dpfalternatives.com/; https://dpfcoring.com/; https://dpfcoring.com/pricing-1):




Figure 1: Screenshot from dpfalternatives.com




Figure 2: Obtained from dpfcoring.com

44. Upon information and belief, DPF and its franchisees have infringed and continue to directly infringe one or more claims of the '920 Patent, literally and/or under the doctrine of equivalents, by its manufacture, use, sale, importation, and/or offer for sale of the Accused Product under the Patent Act, 35 U.S.C. § 271.

45. For example, upon information and belief, DPF and its Franchisees have infringed and continue to directly infringe at least Claim 1 of the '920 Patent under 35 U.S.C. § 271(a) by making, using, selling, offering for sale in, and/or importing the Accused Product into the United States.

46. By way of example, Claim 1 of the '920 Patent recites:

> 1. A system for removing an existing core from a DECD [diesel emission control device] housing comprising:
>
> a core press station having a piston and a working platform;
>
> a control station for controlling movement the piston;
>
> a decore shaft connected to the piston;
>
> a push plate positioned upon the working platform, the push plate having a first internal aperture configured to pass the existing core therethrough;
>
> a pushout donut demountably connected to the push plate, the pushout donut having a second internal aperture configured to pass the existing core therethrough; and
>
> a collection container connected between the push plate and the pushout donut, the collection container configured to receive the existing core,
>
> whereby movement of the piston is configured to push the existing core out of the DECD housing.

47. Upon information and belief, the Accused Product includes each and every limitation of one or more claims of the '920 Patent, including at least Claim 1 as shown below by the DPF New Core product.

48. The Accused Product is "A system for removing an existing core from a DECD." For example, the DPF Alternatives website states "DPF Alternatives now has a nation-wide exclusive partnership with New Core that allows your local DPF Alternatives to offer New Core technology, contact your local DPF Alternatives store to learn more today!" (*See* www.dpfalternatives.com). For example, see:




Figure 3 – Obtained from dpfalternatives.com




Figure 4 – Photograph of Accused Product

49. The Accused Product includes "a core press station having a piston and a working platform." For example, see:




Figure 5 – Obtained from dpfalternatives.com




Figure 6 – Photograph of Accused Product

50. The Accused Product includes "a control station for controlling movement the piston." For example, see:




Figure 7 – Obtained from dpfalternatives.com




Figure 8 – Photograph of Accused Product

51. The Accused Product includes "a decore shaft connected to the piston." For example, see:




Figure 9 – Obtained from dpfalternatives.com




Figure 10 – Photograph of Accused Product

52. The Accused Product includes "a push plate positioned upon the working platform, the push plate having a first internal aperture configured to pass the existing core therethrough." For example, see:




Figure 11 – Obtained from dpfalternatives.com




Figure 12 – Photograph of Accused Product

53. The Accused Product includes "a pushout donut demountably connected to the push plate, the pushout donut having a second internal aperture configured to pass the existing core therethrough." Upon information and belief, the push plate of the DPF New Core product is configured with a recess adapted to receive a pushout donut to assist with core removal. For example, see:




Figure 13 – Obtained from dpfalternatives.com




Figure 14 – Photograph of Accused Product

54. The Accused Product includes "a collection container connected between the push plate and the pushout donut, the collection container configured to receive the existing core." The push plate is configured with a recess adapted to receive a pushout donut. The push plate and the pushout donut are configured such that a collection container is connected therebetween, with the collection container configured to receive the existing core that is pressed out of the DECD

housing. The DPF New Core product, in at least some configurations includes a receptacle configured to receive/support the collection container. For example, see:




Figure 15 – Obtained from dpfalternatives.com




Figure 16 – Photograph of Accused Product

55. The Accused Product includes "whereby movement of the piston is configured to push the existing core out of the DECD housing." For example, the piston of the DPF New Core product is configured such that when the piston extends, an existing core of a DECD housing will be pushed therefrom when the DECD housing is positioned as shown below:




Figure 17 – Obtained from dpfalternatives.com

56. Upon information and belief, the Accused Product includes each and every limitation of at least Claim 2 as shown below by the DPF New Core product.

57. The Accused Product incorporates all of the features of Claim 1. DET repeats and re-alleges each and every allegation of paragraphs 45 through 55 as though fully set forth herein with respect to Claim 2.

58. The Accused Product discloses "a decore shaft portion having a first female aperture configured to connect to the piston." Upon and information and believe, the piston of the DPF New Core product is configured to receive the decore shaft to connect the decore shaft thereto. For example, see:




Figure 18 – Obtained from dpfalternatives.com

59. The Accused Product includes "a decore engagement plate disposed opposite the first female aperture." For example, see:




Figure 19 – Obtained from dpfalternatives.com

60. Upon information and belief, the Accused Product includes each and every limitation of at least Claim 3 as shown below by the DPF New Core product.

61. The Accused Product incorporates all of the features of Claim 1. DET repeats and re-alleges each and every allegation of paragraphs 45 through 55 as though fully set forth herein with respect to Claim 3.

62. The Accused Product includes "wherein the first internal aperture comprises a first diameter, the first diameter is greater than an inside diameter of the DECD housing."




Figure 20 – Obtained from dpfalternatives.com



Figure 21 – Obtained from dpfcoring.com



Figure 22 – Obtained from dpfcoring.com/pricing-1

63. Upon information and belief, the Accused Product includes each and every limitation of at least Claim 4 as shown below by the DPF New Core product.

64. The Accused Product incorporates all of the features of Claim 1. DET repeats and re-alleges each and every allegation of paragraphs 45 through 55 as though fully set forth herein with respect to Claim 4.

65. The Accused Product includes "wherein the second internal aperture comprises a second diameter, the second diameter is approximately equal to an inside diameter of the DECD housing." For example, see:



Figure 23 – Obtained from dpfcoring.com/pricing-1

66. DPF's infringement of the '920 Patent is willful and deliberate. At least as of July 30, 2024, the issue date of the '920 Patent, DPF has infringed and continues to infringe the '920 Patent despite an objectively high likelihood that its actions constituted infringement.

67. The DPF Franchisees are all manufacturing, using, selling, importing, and/or offering to sell the Accused Product by way of their relationships with DPF, and are likewise engaged in infringement for the reasons stated herein.

68. DET has been and will continue to be injured and damaged by DPF's infringement of the '920 Patent.

**COUNT II – INDIRECT (INDUCED AND CONTRIBUTORY) INFRINGEMENT OF U.S. PATENT NO. 12,048,920**

***As to Counterclaim Defendant DPF Alternatives, LLC and Third Party Counterclaim Defendants DPF Franchisees***

69. DET repeats and re-alleges each and every allegation of the foregoing Paragraphs.

70. DPF has had actual notice and knowledge of the patent application that issued as the '920 Patent since at least December 20, 2022, when counsel to the DPF Franchisees, Dady & Gardner, P.A., was notified in writing of the patent application. The subject patent application subsequently published as US 2023/0019521 A1 on January 19, 2023.

71. Upon information and belief, at least as of July 30, 2024 and with knowledge of the '920 Patent, DPF is infringing the '920 Patent under 35 U.S.C. § 271(b) by knowingly and intentionally inducing others to directly infringe the '920 Patent.

72. For example, upon information and belief, DPF induces franchisees and/or end users, including the DPF Franchisees, to directly infringe (literally and/or under the doctrine of equivalents) the '920 Patent by using the Accused Product in the United States. Upon information and belief, DPF takes active steps, directly and/or through contractual relationships with others, with the specific intent, or at the very least, willful blindness, to cause them to use the Accused Product in a manner that infringes at least Claim 1 of the '920 Patent. Upon information and belief, DPF is performing these steps, which constitute induced infringement with the knowledge of the '920 Patent and with the knowledge that the induced acts constitute infringement. Upon information and belief, DPF is aware that the normal and customary use of the Accused Product by DPF's customers would infringe the '920 Patent. DPF's inducement is ongoing.

73. Upon information and belief, at least as of July 30, 2024 and with knowledge of the '920 Patent, DPF has also induced its affiliates and/or third-party manufacturers, shippers, distributors, retailers, or other persons acting on their or their affiliates' behalf, to directly infringe

(literally and/or under the doctrine of equivalents) the ’920 Patent by importing into the United States and/or selling or offering to sell in the United States the Accused Product. Upon information and belief, DPF takes active steps, directly and/or through contractual relationships with others, with the specific intent, or at the very least, willful blindness, to cause such persons to import, sell, or offer to sell the Accused Product in a manner that infringes at least Claim 1 of the ’920 Patent. Upon information and belief, such steps by DPF include, among other things, making or selling the Accused Product outside of the United States for importation into or sale in the United States, knowing that such importation or sale would occur; and directing, facilitating, or influencing DPF’s subsidiaries, affiliates or third party manufacturers, shippers, distributors, retailers, or other persons acting on its or their behalf, to import, sell, or offer to sell the Accused Product in an infringing manner. DPF performs these steps, which constitute induced infringement, with the knowledge of the ’920 Patent and with the knowledge that the induced acts would constitute infringement. DPF performs such steps in order to profit from the eventual sale of the Accused Product in the United States. DPF’s inducement of infringement is ongoing.

74. Upon information and belief, at least as of July 30, 2024 and with knowledge of the ’920 Patent, DPF is infringing the ’920 Patent under 35 U.S.C. § 271(c). The Accused Product is made or especially adapted for use that results in an infringement of the ’920 Patent. The Accused Product includes features that are not staple articles of commerce suitable for substantial non-infringing uses. The Accused Product is a material part of the invention of the ‘920 Patent. The Accused Product is also sold, offered for sale, and used in configurations that do not have substantial non-infringing uses. The intended, normal use of the Accused Product results in infringement of the ’920 Patent. DPF’s contributory infringement is ongoing.

75. DPF's acts of indirect infringement (induced infringement and contributory infringement) as stated herein have caused injury and damage to DET, and will continue to cause additional injury and damage to DET in the future.

## COUNT III – TRADE SECRET MISAPPROPRIATION UNDER CHAPTER 34A OF THE TEXAS CIVIL PRACTICE AND REMEDIES CODE

***As to Counterclaim Defendant DPF Alternatives, LLC***

76. DET incorporates the preceding paragraphs as if fully stated herein.

77. DET hereby brings a claim against DPF for violation of Chapter 134A of the Texas Civil Practice and Remedies Code, otherwise known as the Texas Uniform Trade Secrets Act.

78. DET owns and is in possession of trade secrets relating to the technology, products, systems, methods, and services developed by DET for the recoring of diesel particulate fueling cores within diesel engines, including information within its password-protected portal.

79. This information is not known to or readily ascertainable by third parties that could use it for economic gain.

80. This information has been the subject of reasonable efforts to maintain its secrecy. This includes various contractual agreements, including confidentiality protection provisions within contracts like the MSAs and Confidentiality Agreements referenced herein and as to other third parties, enforcement of intellectual property rights, and having computers, databases, and videos with technical data on them be username and password protected.

81. DET's trade secret information was misappropriated by DPF. Specifically, DET's trade secret information was disclosed without consent, to DPF or related individuals or parties, by way of DPF's franchisees. DPF misused its contractual relationships with its franchisees and access to its franchisees' information, including those franchisees who were using Recore technology under license from DET, subject to contractual confidentiality and nondisclosure

obligations, to obtain access to these trade secrets that it used in its competing New Core technology and affiliated methods.

82. At the time of disclosure, DPF knew or had reason to know that this trade secret information was acquired by its franchisees under circumstances that gave rise to a duty to maintain the secrecy of or limit the use of the trade secret information.

83. As a result of this misappropriation, DET has been substantially damaged by DPF's misappropriation. This damage is monetary in nature, including actual losses or through unjust enrichment, or may be awarded by the way of a reasonable royalty under Section 134A.004(a) of the Texas Civil Practice and Remedies Code.

84. Moreover, given DPF's conduct, including but not limited to its promotion of "New Core" products and methods offered by DPF known to be derived from the disclosure of protected trade secret information, such misappropriation was willful and malicious, thus entitling DET to exemplary damages in an amount not exceeding twice any award made under Section 134A.004(a) of the Texas Civil Practice and Remedies Code, pursuant to Section 134A.004(b) of the Texas Civil Practice and Remedies Code.

85. In addition, DET damages may be incalculable overall and thus justify injunctive relief under Chapter 134A.003 of the Texas Civil Practice and Remedies Code.

86. DET is entitled to attorneys' fees as to this claim under Section 134A.005(3) of the Texas Civil Practice and Remedies Code.

**COUNT IV – TRADE SECRET MISAPPROPRIATION UNDER 18 U.S.C. § 1836**

***As to Counterclaim Defendant DPF Alternatives, LLC***

87. DET incorporates the preceding paragraphs as if fully stated herein.

88. DET hereby brings a claim against DPF for violation of 18 U.S.C. § 1836, otherwise known as the Defend Trade Secrets Act.

89. DET owns and is in possession of trade secrets relating to the technology, products, systems, methods, and services developed by DET for the recoring of diesel particulate fueling cores within diesel engines, including information within its password-protected portal.

90. This information is not known to or readily ascertainable by third parties that could use it for economic gain.

91. This information has been the subject of reasonable efforts to maintain its secrecy. This includes various contractual agreements, including confidentiality protection provisions within contracts like the MSAs and Confidentiality Agreements referenced herein and as to other third parties, enforcement of intellectual property rights, and having computers, databases, and videos with technical data on them be username and password protected.

92. DET's trade secret information was misappropriated by DPF. Specifically, DET's trade secret information was disclosed without consent, to DPF or related individuals or parties, by way of DPF's franchisees. DPF misused its contractual relationships with its franchisees and access to its franchisees' information, including those franchisees who were using Recore technology under license from DET, subject to contractual confidentiality and nondisclosure obligations, to obtain access to these trade secrets that it used in its competing New Core technology and affiliated methods.

93. At the time of disclosure, DPF knew or had reason to know that this trade secret information was acquired by its franchisees under circumstances that gave rise to a duty to maintain the secrecy of or limit the use of the trade secret information.

94. As a result of this misappropriation, DET has been substantially damaged by DPF's misappropriation. This damage is monetary in nature, including actual losses or through unjust enrichment, or may be awarded by the way of a reasonable royalty under 18 U.S.C. § 1836(b)(3)(B).

95. Moreover, given DPF's conduct, including but not limited to its promotion of "New Core" products and methods offered by DPF known to be derived from the disclosure of protected trade secret information, such misappropriation was willful and malicious, thus entitling DET to exemplary damages in an amount not exceeding twice any award made under 18 U.S.C. § 1836(b)(3)(B).

96. In addition, DET damages may be incalculable overall and thus justify injunctive relief under 18 U.S.C. § 1836(b)(3)(A).

97. DET is entitled to attorneys' fees as to this claim under 18 U.S.C. § 1836(b)(3)(D).

**<u>Demand for Jury Trial</u>**

98. DET demands a jury on all issues so triable.

**<u>Prayer for Relief</u>**

WHEREFORE, DET respectfully prays for entry of a judgment in its favor and against DPF as follows:

A. Declare that DPF has infringed one or more claims of the '920 Patent, and such infringement has been willful;

B. Award DET all damages adequate to compensate DET for DPF's infringement of the '920 Patent, and such damages be trebled under 35 U.S.C. § 284 and awarded to DET, with pre- and post-judgment interest;

C. Adjudge and decree that this case is an exceptional case under 35 U.S.C. § 285, and award DET attorneys' fees, costs, and all expenses incurred in this action;

D. Award DET all actual and compensatory damages, including all damages available under 18 U.S.C. § 1836 and Chapter 134A of the Texas Civil Practice and Remedies Code, including actual damages, reasonable royalty damages, and/or damages for unjust enrichment;

E. Award exemplary damages as provided by 18 U.S.C. § 1836 and Chapter 134A of the Texas Civil Practice and Remedies Code;

F. Award DET all equitable and injunctive relief the Court deems just and proper;

G. Award DET its costs of court;

H. Award DET its attorneys' fees;

I. Award DET all prejudgment and post-judgment interest to which it is entitled by law; and

J. Award DET such other and further relief which may be requested and to which it is entitled.

Dated: February 28, 2025.

Respectfully submitted,

*/s/ M. Ross Cunningham*
M. Ross Cunningham
State Bar No. 24007062
rcunningham@cunninghamswaim.com
Alex Whitman
State Bar No. 24081210
awhitman@cunninghamswaim.com
Bryan S. David
State Bar No. 24031989
bdavid@cunninghamswaim.com
CUNNINGHAM SWAIM, LLP
4015 Main Street, Suite 200
Dallas, Texas 75226
Telephone: (214) 646-1495
Facsimile: (214) 613-1163

Lekha Gopalakrishnan
State Bar No. 24027332
lgopalakrishnan@winstead.com
William Allen Moon
State Bar No. 24065782
amoon@winstead.com
WINSTEAD PC
500 Winstead Building
2728 N. Harwood Street
Dallas, Texas 75201
Telephone: 214-745-5400
Facsimile: 214-745-5390

**ATTORNEYS FOR DET DIESEL EMISSION TECHNOLOGIES, LLC AND SYNERGY CATALYST, LLC**

## CERTIFICATE OF SERVICE

In accordance with Federal Rule of Civil Procedure 5, the undersigned hereby certifies that all counsel of record are being served with a copy of this document via the Court's CM/ECF notification system by email on this 28th day of February, 2025.

*/s/ M. Ross Cunningham*
M. Ross Cunningham