UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| DPF ALTERNATIVES, LLC; DPF SOURCE LLC; and DPF SOURCE HOLDINGS, LLC, § § § § § Plaintiffs/Counter-Defendants, § § v. § § § DET DIESEL EMISSION TECHNOLOGIES, § LLC, § § Defendant/Counter-Plaintiff/ § Third-Party Plaintiff, § § SYNERGY CATALYST, LLC; § PERFORMANCE INDUSTRIES, INC.; and § MICHAEL VANPATTEN, § § Defendants, § § COLLATERAL RESOURCES, LLC, d/b/a § DPF ALTERNATIVES GREELEY, CO; DPF § ALTERNATIVES GRAND JUNCTION, CO; § DPF ALTERNATIVES IOWA LLC; LUSTER § DUSTERS, LLC d/b/a DPF ALTERNATIVES § OF SOUTHERN KENTUCKY; DPF § ALTERNATIVES CENTRAL & MIDWEST § OHIO; DPF ALTERNATIVES, LLC d/b/a DPF § ALTERNATIVES AUBURN, WA; DPF CLEAN § TECHNOLOGIES, INC.; DPF § ALTERNATIVES OF SOUTHERN INDIANA § LLC; and DPF ALTERNATIVES WEST § HOUSTON, § § Counter-Defendants. § | CIVIL ACTION No. 3:24-cv-1953-B |

MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff/Counter-Defendant DPF Alternatives, LLC and Counter-Defendants (collectively, "DPF")'s Motion to Dismiss Defendant/Counter-Plaintiff DET Diesel Emission Technologies, LLC ("DET")'s counterclaims (Doc. 140) and Counter-Defendant RTR DPF LLC ("RTR")'s Motion to Dismiss (Doc. 135). For the following reasons, the Court **DENIES** both Motions.

## I.

## BACKGROUND

DPF, the plaintiff in this case, asserts Lanham Act and antitrust claims, while the defendant, DET, asserts patent infringement and misappropriation of trade secrets counterclaims against DPF and numerous Counter-Defendants. Only DET's counterclaims are at issue in this Order.

DET provides products and services for diesel engines. It creates "products and methods" to replace or install diesel particulate filters. Doc. 128, Answer, 19 ¶ 18.[1] Diesel particulate filters remove diesel particulate matter from diesel engines. *Id.* DET has developed its technology and techniques for over two decades, and, during this time, DET never shared its intellectual property with anyone outside the company. *Id.* at 20 ¶ 19.

In 2019, DET developed its "Recore" technology, which "allows for the quick removal" of a diesel filter's old core, while also making it much easier to install a new diesel filter core. *Id.* at 20 ¶ 21. DET obtained U.S. Patent No. 12,048,920 ("the '920 Patent") for the Recore technology called "System and Process for Replacing a Core of Diesel Emission Control Device," and DET also believes that its Recore technology contains numerous trade secrets. *Id.* at 20–21 ¶¶ 24–25.

---

[1] DET re-uses paragraph numbers in its Answer and Counterclaims (Doc. 128). When the Court cites DET's pleadings, the Court will cite both the page and paragraph numbers.

DET licensed its Recore technology to third parties in 2022 and 2023. *Id.* at 20 ¶ 23. Before accessing DET's proprietary materials, the licensees were required to sign confidentiality agreements. *Id.* These confidentiality agreements prohibited the licensees from sharing DET's intellectual property with any party. *Id.* at 21 ¶ 30. Several of DPF's franchisees, the Counter-Defendants in this lawsuit, signed licensing agreements with DET to use the Recore technology. *Id.* at 22 ¶¶ 31–32. DPF did not sign such an agreement. *See id.* However, through its franchisees, DPF gained access to the Recore technology's trade secrets, in violation of the confidentiality agreements that the franchisees signed. *Id.* at 22 ¶ 33.

DPF ultimately developed a device called "New Core" that also replaces old cores in diesel filters. *Id.* at 24 ¶ 43. DET alleges that the New Core device infringes the '920 Patent and that DPF misappropriated DET's trade secrets to develop the device. DET asserts claims for direct patent infringement, indirect patent infringement, and misappropriation of trade secrets under Texas and federal law. *Id.* at 23–53 ¶¶ 38–97. DPF moves to dismiss all four claims for failure to state a claim. Doc. 140, Mot. Dismiss, 1. The Court considers the Motion below.

## II.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) authorizes a court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "the Court must accept all well-pleaded facts as true, and view them in the light most favorable to the plaintiff." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019) (alteration omitted) (citation omitted).

But the Court will "not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

To survive a motion to dismiss, plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). When well-pleaded facts fail to meet this standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (alteration omitted) (citation omitted).

### III.

### ANALYSIS

The Court first **DENIES AS MOOT** RTR's Motion to Dismiss because RTR joined DPF and the other Counter-Defendants' Motion to Dismiss. The Court then **DENIES** DPF's Motion to Dismiss in its entirety.

*A.    The Court Denies RTR's Motion to Dismiss as Moot.*

RTR originally filed its own Motion to Dismiss DET's counterclaims. Doc. 135, Mot. Dismiss, 1. DPF then filed a Motion to Dismiss on behalf of all Counter-Defendants, including RTR, because their lead counsel "learn[ed] . . . that undersigned counsel will and does represent all counter-defendants." Doc. 140, Mot. Dismiss, 1. The Motions are largely identical. *Compare* Doc.

135, Mot., *with* Doc. 140, Mot. DPF also said that its Motion to Dismiss amends RTR's Motion to Dismiss. *Id.* Accordingly, the Court denies as moot RTR's Motion to Dismiss.

B.  *The Court Denies DPF's Motion to Dismiss in its Entirety.*

DET asserts four counterclaims: (1) direct patent infringement; (2) indirect patent infringement; (3) misappropriation of trade secrets in violation of Chapter 34A of the Texas Civil Practices and Remedies Code; and (4) misappropriation of trade secrets in violation of 18 U.S.C. § 1836. Doc. 128, Answer, 23–53 ¶¶ 38–97. DPF moves to dismiss all four claims. Doc. 140-1, Br. Mot., 2. The Court addresses each of DET's claims in turn.

1.  <u>DET Stated a Direct Patent Infringement Claim.</u>

DET adequately alleged each element of a direct patent infringement claim. As a preliminary matter, the Court applies the Federal Circuit's binding precedent to the "substantive issues of patent law" arising out of DET's claim for direct patent infringement. *See Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt., LLC*, 778 F.3d 1311, 1314 (Fed. Cir. 2015). However, the Court applies the law of the Fifth Circuit to any "general procedural question[s]." *See id.*

DET alleges that DPF's product, New Core, "directly infringe[s] at least Claim 1 of the '920 Patent." Doc. 128, Answer, 25 ¶ 45. A party directly infringes a patent when it "without authority[,] makes, uses, offers to sell, or sells any patented invention." 35 U.S.C. § 271(a). Every patent includes various "claims" that define the legal scope of the patent. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) ("[T]he claims of a patent define the invention to which the patentee is entitled the right to exclude." (citation omitted)). An accused product only infringes a patent claim if every claim limitation is present in the accused product. *See LifeNet Health v. LifeCell Corp.*, 837

F.3d 1316, 1325 (Fed. Cir. 2016) ("Direct infringement of an apparatus claim requires that each and every limitation set forth in a claim appear in an accused product." (quotation omitted)).

Thus, DET must allege that New Core contains every element of Claim 1 of the '920 Patent to state a claim for direct patent infringement. *See id.* "A plaintiff may plausibly plead a cause of action for direct [patent] infringement by providing the asserted patents, identifying the accused products 'by name' and 'attaching photos of the product packaging,' and alleging that the accused products meet 'each and every element of at least one claim.'" *CTD Networks, LLC v. Google, LLC*, 688 F. Supp. 3d 490, 499 (W.D. Tex. 2023), *appeal dismissed*, No. 2023-2428, 2024 WL 2587917 (Fed. Cir. May 24, 2024) (citing *Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018)).

DET plausibly alleged its claim for direct patent infringement. DET included the '920 Patent in its pleadings.[2] DET has identified the product that it alleges infringes the '920 Patent: DPF's New Core device. Doc. 128, Answer, 24 ¶ 43. DET's pleadings also include more than ten pictures of the allegedly infringing product. *Id.* at 27–47. Further, the pictures of the New Core device include annotations explaining how New Core allegedly meets each claim element of Claim 1 of the '920 Patent. *See id.* For example, one claim element from Claim 1 of the '920 Patent provides that the system must have "a core press station having a piston and a working platform." *Id.* at 25–26 ¶ 46. DET provided the following picture of the allegedly infringing New Core device with a core press station, piston, and a working platform:

---

[2] DET attached the '920 Patent to its original Answer, Doc. 62-1, Ex. A, and referenced the patent throughout its operative answer. *See, e.g.*, Doc. 128, Answer, 21 ¶ 25. Thus, the '920 Patent is part of the pleadings. *See Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) ("A written document that is attached to a complaint as an exhibit is considered part of the complaint and may be considered in a 12(b)(6) dismissal proceeding.").



*Id.* at 29. DET's additional photographs identify which parts of the New Core device contain each claim element disclosed in Claim 1 of the '920 Patent. *See id.* at 31–47.

In short, DET has provided the '920 Patent, identified the product that is allegedly infringing the '920 Patent, provided pictures of the allegedly infringing product, and alleged that the infringing product meets every claim element in Claim 1 of the '920 Patent. Therefore, DET has adequately stated a claim for direct patent infringement. *See CTD Networks*, 688 F. Supp. 3d at 499.

DPF argues that DET "merely concludes," but does not sufficiently allege, that the New Core device contains every claim element of the '920 Patent. Doc. 140-1, Br. Mot., 3. For example, DPF argues that DET did not sufficiently allege that the New Core device has "a push plate positioned upon the working platform." *Id.*; *see also* Doc. 128, Answer, 25–26, ¶ 46. This argument lacks merit. Through the photographs included in its pleadings, DET has alleged that the New Core device's push plate is positioned on the working platform. In one picture, DET alleges that the green piece is the working platform:



Doc. 128, Answer, 29.

And in the following picture, DET alleges that the piece on top of the working platform is the push plate:



*Id.* at 35. Thus, DET plausibly alleged, rather than "merely concluded," that New Core has a push plate that is positioned on a working platform. DET includes similar allegations for each claim element. Accordingly, the Court denies DPF's Motion to Dismiss as to DET's claim for direct patent infringement.

    2.  <u>DET Stated an Indirect Patent Infringement Claim.</u>

DET alleges that DPF indirectly infringed the '920 Patent. As with the direct patent infringement claim, the Court applies the Federal Circuit's binding precedent to the "substantive issues of patent law" arising out of DET's claim for indirect patent infringement and the law of the Fifth Circuit to any "general procedural question[s]." *See Soverain Software LLC*, 778 F.3d at 1314.

There are two types of claims for indirect patent infringement: (1) induced infringement and (2) contributory infringement. *Beneficial Innovations, Inc. v. Advance Publ'ns, Inc.*, No. 2:11-CV-229-JRG-RSP, 2014 WL 12603492, at *2 (E.D. Tex. Jan. 6, 2014). "Whoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). "In order to succeed on a claim of inducement, the patentee must show, first that there has been direct infringement, and second, that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1378 (Fed. Cir. 2005) (quotation omitted). "Specific intent" means that the infringer either had actual knowledge of the asserted patents or acted with willful blindness of the asserted patents. *Atlas Glob. Techs., LLC v. Sercomm Corp.*, 638 F. Supp. 3d 721, 725 (W.D. Tex. 2022); *see also Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 768 (2011).

First, the Court concluded above that DET plausibly alleged that DPF and its franchisees were directly infringing the '920 Patent. Second, DET adequately alleged that DPF induced its

franchisees to infringe the '920 Patent. DET alleges that DPF causes its franchisees to use the New Core device "in a manner that infringes at least Claim 1 of the '920 Patent." Doc. 128, Answer, 48 ¶ 72. DET then alleges that DPF has "induced its affiliates" to import the New Core device into the United States and to sell the allegedly infringing product to consumers in the United States. *Id.* at 49 ¶ 73. Thus, DET has alleged that DPF induced others to infringe the '920 Patent.

DPF does not argue that it lacked knowledge of the '920 Patent. Instead, DPF argues that DET's indirect patent infringement claim must be dismissed because DET failed to state a claim for direct patent infringement. Doc. 140-1, Br. Mot., 4. However, the Court has already rejected this argument.

DPF then argues that DET did not include any allegations establishing that "it is plausible that any Counter-Defendant induce[d] anyone else, whether a party or not, to infringe the accused product." *Id.* However, DET adequately alleged its claim for indirect patent infringement by alleging that DPF told its affiliates to use and import the New Core device, as the Court discussed above.

DPF lastly contends that DET failed to allege that DPF "contributorily infringe[d] the ['920] Patent." Doc. 140-1, Br. Mot., 5. The Court need not address this argument because DET adequately alleged that DPF induced its franchisees and other affiliates to infringe the '920 Patent.

   3. <u>DET Stated Both of its Misappropriation of Trade Secrets Claims.</u>

DET asserts claims for misappropriation of trade secrets under both Texas and federal law. Doc. 128, Answer, 50–53 ¶¶ 76–97. DET's Texas law misappropriation of trade secrets claim arises under the Texas Uniform Trade Secrets Act ("TUTSA"). *See* TEX. CIV. PRAC. & REM. CODE § 134A.002. DET's federal trade secrets misappropriation claim arises under the Defend Trade Secrets Act ("DTSA"). *See* 18 U.S.C. § 1836. Courts have described TUTSA and DTSA as creating

"nearly identical causes of action." *Centennial Bank v. Holmes*, 717 F. Supp. 3d 542, 559 (N.D. Tex. 2024) (Hendrix, J.).[3] Accordingly, the Court will consider DET's two misappropriation of trade secrets claims together.

To state a claim for misappropriation of trade secrets, a plaintiff must plausibly allege that (1) it owns a trade secret and (2) its trade secret was misappropriated. *See* 18 U.S.C. § 1836(b)(1). DET has adequately alleged both elements.

*i. DET sufficiently alleged that it has trade secrets.*

A trade secret includes "all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes." 18 U.S.C. § 1839(3). But something can only be a trade secret if the plaintiff "has taken reasonable measures to keep such information secret" and if "the information derives independent economic value . . . from not being generally known to . . . another person." *Id.* § 1839(3)(A)–(B).

At the motion to dismiss stage, "courts routinely find a plaintiff's allegations to be sufficient if they 'identify specific groupings of information that contain trade secrets, identify the types of trade secrets contained in the groupings, and explain how the alleged trade secrets were maintained and treated as trade secrets.'" *Centennial Bank*, 717 F. Supp. 3d at 561 (citing *Vianet Grp. PLC v. Tap Acquisition, Inc.*, No. 3:14-CV-3601-B, 2016 WL 4368302, at *20 (N.D. Tex. Aug. 16, 2016) (Boyle, J.)).

---

[3] The only significant distinction between the two statutes is that plaintiffs are required to allege that the trade secret was used in interstate commerce under the DTSA. *Compare* 18 U.S.C. § 1836(b)(1), *with* TEX. CIV. PRAC. & REM. CODE § 134A.002. Here, that distinction is not material because DPF does not argue that the alleged trade secrets were not used in interstate commerce. *See* Doc. 140-1, Br. Mot., 5–7.

Here, DET has adequately alleged that it owns a trade secret. First, DET alleges that its trade secrets are "scientific" or "engineering information" because they "relat[e] to the technology, products, systems, methods, and services developed by DET" to replace "diesel particulate fueling cores" that are located inside diesel engines. Doc. 128, Answer, 50 ¶ 78; *see* 18 U.S.C. § 1839(3). Thus, DET has "identif[ied] the types of trade secrets" at issue in this lawsuit. *See Centennial Bank*, 717 F. Supp. 3d at 561.

Second, DET has identified the groups of information that contain its trade secrets. *Id.* DET's trade secrets are found on "groups of information" including "videos, databases, ongoing research data, product modifications, order processing utilizations, and methods" that are used to operate DET's Recore technology. Doc. 128, Answer, 20–21 ¶ 24.

Third, DET has explained how it treated its proprietary tools as trade secrets. *See Centennial Bank*, 717 F. Supp. 3d at 561. DET's trade secrets were on an online portal that was "password-protected." Doc. 128, Answer, 20–21 ¶ 24. Only DET's licensees were given access to this portal. *Id.* And DET's licensees were required to sign several confidentiality agreements before gaining access to the online portal. *Id.* at 22 ¶ 32. These confidentiality agreements prevented licensees from sharing DET's proprietary information. *Id.* at 21 ¶ 30. The Court finds that these allegations are sufficient to state a claim for misappropriation of trade secrets. *See Centennial Bank*, 717 F. Supp. 3d at 561.

DPF argues that DET failed to plausibly allege its trade secrets claims because "DET pleads conclusory allegations or, at best, categorical terms of trade secrets without providing sufficient facts to ascertain the boundaries within which DET's alleged secrets lie, and, thereby, fails to plausibly plead, when viewing the case most favorably to [DPF], its trade-secret misappropriation counts to

survive dismissal." Doc. 140-1, Br. Mot., 6. The Court finds that DET's allegations were not conclusory and that DET sufficiently alleged the existence of trade secrets, for the reasons discussed above. DPF's argument also misstates the legal standard. DPF argues that the Court should "view[] the case most favorably to" DPF when ruling on DPF's Motion to Dismiss. However, when ruling on a 12(b)(6) motion to dismiss, the Court must view the facts in the light most favorable to the *non-moving* party. *Walker*, 938 F.3d at 735. Here, DET is the non-moving party, so the Court will not view the allegations in the light most favorable to DPF. *See id.* Thus, the Court rejects DPF's argument. DPF adequately alleged that it has trade secrets.

*ii. DET adequately alleged that DPF misappropriated DET's trade secrets.*

A trade secret is misappropriated when, as relevant here, someone acquires the trade secret by improper means, and they know or should have known it was acquired by improper means. 18 U.S.C. § 1839(5)(A). A defendant misappropriates a trade secret when it acquires a trade secret by inducing a third party to breach a duty to maintain secrecy. *Id.* § 1839(6); *see Comput. Scis. Corp. v. Tata Consultancy Servs. Ltd.*, No. 3:19-CV-970-L, 2019 WL 2058772, at *3 (N.D. Tex. May 9, 2019) (Lindsay, J.).

Here, some of DPF's franchisees entered licensing agreements with DET. Doc. 128, Answer, 50–51 ¶ 81. The licensing agreement included an agreement to keep DET's intellectual property confidential. *Id.* DET alleges that DPF convinced its franchisees to breach this duty of confidentiality by "misus[ing] its contractual relationships with its franchisees." *Id.* Thus, DET has alleged that DPF "induced . . . a breach of a duty to maintain secrecy." 18 U.S.C. § 1839(6). Therefore, DET has plausibly alleged that DPF misappropriated DET's trade secrets.

* * *

DET has stated a claim for all four of its causes of action. Accordingly, the Court denies DPF's Motion to Dismiss as to DET's claims for direct patent infringement, indirect patent infringement, misappropriation of trade secrets under Texas law, and misappropriation of trade secrets under federal law.

IV.

CONCLUSION

For the reasons discussed above, the Court **DENIES AS MOOT** RTR's Motion to Dismiss (Doc. 135) and **DENIES** DPF's Motion to Dismiss (Doc. 140). In accordance with Federal Rule of Civil Procedure 12(a)(4)(A), DPF and the Counter-Defendants must file an answer to DET's counterclaims within **fourteen (14)** days of this Order.

SO ORDERED.

SIGNED: July 10, 2025.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE