# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **DPF ALTERNATIVES LLC,** | § | |
| | § | |
| **Plaintiff/Counterclaim Defendant,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **DET DIESEL EMISSION** | § | Civil Action No. 3:24-cv-01953-B |
| **TECHNOLOGIES, LLC,** | § | |
| | § | |
| **Defendant/Counterclaim Plaintiff/Third-** | § | |
| **Party Plaintiff,** | § | |
| | § | |
| **SYNERGY CATALYST, LLC,** | § | |
| | § | |
| **Defendant,** | § | |
| | § | |
| **COLLATERAL RESOURCES, LLC d/b/a** | § | |
| **DPF ALTERNATIVES GREELEY, CO; DPF** | § | |
| **ALTERNATIVES GRAND JUNCTION, CO;** | § | |
| **DPF ALTERNATIVES IOWA LLC;** | § | |
| **LUSTER DUSTERS, LLC d/b/a DPF** | § | |
| **ALTERNATIVES OF SOUTHERN** | § | |
| **KENTUCKY; DPF ALTERNATIVES** | § | |
| **CENTRAL & MIDWEST OHIO; DPF** | § | |
| **ALTERNATIVES, LLC d/b/a DPF** | § | |
| **ALTERNATIVES AUBURN, WA; DPF** | § | |
| **CLEAN TECHNOLOGIES, INC.; DPF** | § | |
| **ALTERNATIVES OF SOUTHERN** | § | |
| **INDIANA LLC; and DPF ALTERNATIVES** | § | |
| **WEST HOUSTON;** | § | |
| | § | |
| **Third-Party Defendants.** | § | |

## DET DIESEL EMISSION TECHNOLOGIES, LLC'S OPENING CLAIM CONSTRUCTION BRIEF

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

I.      Introduction ................................................................................................................ 1

II.     Background ................................................................................................................. 1

III.    General Claim Construction Law ............................................................................... 2

        A. Courts Depart from Ordinary Meaning of a Claim Term Only if Clear and
        Unmistakable Disclaimer or Clear Intent to Redefine ......................................... 4

        B. Means Plus Function Claims – 35 U.S.C. § 112(f) ............................................. 6

        C. Prosecution History of the '920 Patent ............................................................... 6

IV.     U.S. Patent No. 12,048,920 and the claims at issue .................................................. 7

V.      The Court should adopt DET's proposed claim constructions .................................. 10

VI.     Conclusion ................................................................................................................. 19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Acumed LLC v. Stryker Corp.*,
    483 F.3d 800 (Fed. Cir. 2007)................................................................4

*Ancora Techs., Inc. v. Apple, Inc.*,
    744 F.3d 732 (Fed. Cir. 2014)................................................................4

*Avid Tech., Inc. v. Harmonic, Inc.*,
    812 F.3d 1040 (Fed. Cir. 2016)..............................................................5

*Electro Med. Sys., S.A. v. Cooper Life Scis., Inc.*,
    34 F.3d 1048 (Fed. Cir. 1994)...........................................................3, 17

*GE Lighting Solutions, LLC v. AgiLight, Inc.*,
    750 F.3d 1304 (Fed. Cir. 2014)...........................................................5, 6

*Hill-Rom Servs., Inc. v. Stryker Corp.*,
    755 F.3d 1367 (Fed. Cir. 2014)...........................................................5, 6

*Home Diagnostics, Inc. v. LifeScan, Inc.*,
    381 F.3d 1352 (Fed. Cir. 2004)..............................................................3

*Info-Hold, Inc. v. Applied Media Techs. Corp.*,
    783 F.3d 1262 (Fed. Cir. 2015)..............................................................5

*Markman v. Westview Instruments, Inc.*,
    517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996)....................2, 3

*Massachusetts Inst. of Tech. v. Shire Pharm., Inc.*,
    839 F.3d 1111 (Fed. Cir. 2016)...........................................................2, 5

*Middleton, Inc. v. 3M Co.*,
    311 F.3d 1384 (Fed. Cir. 2002)..............................................................3

*Omega Eng'g, Inc. v. Raytek Corp.*,
    334 F.3d 1314 (Fed. Cir. 2003)..............................................................3

*On-Line Techs., Inc. v. Bodenseewerk Perkin-Elmer GmbH*,
    386 F.3d 1133 (Fed. Cir. 2004)..............................................................4

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) (en banc)......................................2, 3, 4, 5

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
　　711 F.3d 1348 (Fed. Cir. 2013)...................................................................6

*Spectrum Int'l, Inc. v. Sterilite Corp.*,
　　164 F.3d 1372 (Fed. Cir. 1988)...................................................................3

*Starhome GmbH v. AT&T Mobility LLC*,
　　743 F.3d 849 (Fed. Cir. 2014)...................................................................2

*Straight Path IP Grp., Inc. v. Sipnet EU S.R.O.*,
　　806 F.3d 1356 (Fed. Cir. 2015)...............................................................4, 5

*Teva Pharms. USA, Inc. v. Sandoz, Inc.*,
　　135 S. Ct. 831, 190 L. Ed. 2d 719 (2015).................................................2, 4

**Statutes**

35 U.S.C. § 112(f).........................................................................................1, 6

## I.    INTRODUCTION

Pursuant to P.R. 4-5(a) and the Scheduling Order dated May 19, 2025 (ECF No. 150), Defendant/Counterclaim Plaintiff DET Diesel Emission Technologies, LLC ("DET") submits this opening brief in support of its proposed construction of the disputed claim terms 1-8 of U.S. Patent No. 12,048,920 ("the '920 Patent") (Joint Claim Construction Statement, Appendix 1; ECF No. 152), pertaining to asserted claims 1, 2, 3, 4 and 5.

DET's proposed constructions are supported in the intrinsic record and are consistent with the way the terms would have been understood by persons of ordinary skill in the art at the time of the invention.  The only terms from the '920 Patent that DET believes require construction beyond their plain and ordinary meaning are, "working platform", "decore shaft", "push plate", "pushout donut", and "decore engagement plate." Plaintiff/Counterclaim Defendant, DPF Alternatives LLC ("DPF") unnecessarily seeks construction of numerous other terms and phrases in the '920 Patent.  DPF's proposed constructions improperly inject limitations into the disputed terms by: (i) confining the claims to exemplary embodiments described in the specification; (ii) narrowing claim terms without the requisite support in the intrinsic record to do so; and (iii) misapplying the means-plus-function provisions of 35 U.S.C. § 112(f).  Ultimately, DPF wishes the Court to construe the claim terms in a manner that is inconsistent with the evidence on record, to insulate it from infringement.  As will be discussed more fully below, the Court should adopt the claim constructions proposed by DET.

## II.    BACKGROUND

Diesel engines rely upon diesel particulate filters to remove contaminants from the exhaust gas generated during the operation of the engine.  A diesel particulate filter is comprised of a filter element, sometimes referred to as a "core", that is installed within a housing.  Exhaust gas is

directed through the diesel particulate filter to capture contaminants.  These contaminants are detrimental to the environment and can be carcinogenic to people.  Over time, the cores within the diesel particulate filters become clogged, which reduces their efficiency and effectiveness. Traditionally, diesel particulate filters were replaced by removing and replacing the entire assembly comprising a housing and the diesel particulate filter.  While this method of replacing the entire assembly achieved the goal of restoring the efficiency and effectiveness of the diesel particulate filter, the cost of replacement was expensive.  Recognizing this problem, Mike VanPatten and Peter Lambe of DET developed and patented a system for removing an existing core from a housing and inserting a replacement core into the housing.  '920 Patent at 5:24-27.

### III.    GENERAL CLAIM CONSTRUCTION LAW

The purpose of claim construction is "to give claim terms the meaning understood by a person of ordinary skill in the art at the time of invention."  *Massachusetts Inst. of Tech. v. Shire Pharm., Inc.*, 839 F.3d 1111, 1118 (Fed. Cir. 2016)(citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–14 (Fed. Cir. 2005) (en banc).  There is a "heavy presumption that claim terms are to be given their ordinary and customary meaning."  *Id.*; *Starhome GmbH v. AT&T Mobility LLC*, 743 F.3d 849, 857 (Fed. Cir. 2014)("we indulge a 'heavy presumption' that a claim term carries its ordinary and customary meaning").  The "ordinary meaning" of a claim term is "its meaning to the ordinary artisan after reading the entire patent."  *MIT v. Shire*, 839 F.3d at 1118.  Claim construction is "'exclusively' for 'the court' to determine." *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 835, 190 L. Ed. 2d 719 (2015) (quoting *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996)).

Claims must also be read "in view of the specification, of which they are a part." *Markman*, 52 F.3d at 979.  "[T]he specification 'is always highly relevant to the claim construction analysis.

Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Phillips*, 415 F.3d at 1315 (quoting *Vitronics*, 90 F.3d at 1582). In the specification, a patentee may define a term to have a meaning that differs from the meaning that the term would otherwise possess. *Id.* at 1316. In such a case, the patentee's lexicography governs. *Id.* The specification may also reveal a patentee's intent to disavow claim scope. *Id.* Such intention is dispositive of claim construction. *Id.* Although the specification may indicate that a certain embodiment is preferred, a particular embodiment appearing in the specification will not be read into the claim when the claim language is broader than the embodiment. *Electro Med. Sys., S.A. v. Cooper Life Scis., Inc.*, 34 F.3d 1048, 1054 (Fed. Cir. 1994).

The patent's prosecution history is another tool to supply the proper context for claim construction because it demonstrates how the inventor understood the invention. *Phillips*, 415 F.3d at 1317. A patentee may also serve as his own lexicographer and define a disputed term in prosecuting a patent. *Home Diagnostics, Inc. v. LifeScan, Inc.*, 381 F.3d 1352, 1356 (Fed. Cir. 2004). Similarly, distinguishing the claimed invention over the prior art during prosecution indicates what a claim does not cover. *Spectrum Int'l, Inc. v. Sterilite Corp.*, 164 F.3d 1372, 1378-79 (Fed. Cir. 1988). The doctrine of prosecution disclaimer precludes a patentee from recapturing a specific meaning that was previously disclaimed during prosecution. *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003). A disclaimer of claim scope must be clear and unambiguous. *Middleton, Inc. v. 3M Co.*, 311 F.3d 1384, 1388 (Fed. Cir. 2002).

Although "less significant than the intrinsic record in determining the legally operative meaning of claim language," the court may rely on extrinsic evidence to "shed useful light on the relevant art." *Phillips*, 415 F.3d at 1317 (internal quotations omitted). Technical dictionaries and treatises may help the court understand the underlying technology and the way one skilled in the

art might use a claim term, but such sources may also provide overly broad definitions or may not be indicative of how a term is used in the patent. *See id*. at 1318. Similarly, expert testimony may aid the court in determining the meaning of a term in the pertinent field, but "conclusory, unsupported assertions by experts as to the definition of a claim term are not useful to a court." *Id*. Generally, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms . . . ." *Id*. Extrinsic evidence may be useful when considered in the context of the intrinsic evidence, *id*. at 1319, but it cannot "alter a claim construction dictated by a proper analysis of the intrinsic evidence," *On-Line Techs., Inc. v. Bodenseewerk Perkin-Elmer GmbH*, 386 F.3d 1133, 1139 (Fed. Cir. 2004). To the extent the court "make[s] subsidiary factual findings about th[e] extrinsic evidence," the court construes the claims in light of those factual findings. *Teva Pharms. USA, Inc. v. Sandoz, Inc*., 135 S. Ct. 831, 841, 190 L. Ed. 2d 719 (2015).

### A. Courts Depart from Ordinary Meaning of a Claim Term Only if Clear and Unmistakable Disclaimer or Clear Intent to Redefine

In some cases, "the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges," and claim construction in those cases "involves little more than the application of the widely accepted meaning of commonly understood words." *Acumed LLC v. Stryker Corp*., 483 F.3d 800, 805 (Fed. Cir. 2007). In other words, where there is "no facial ambiguity or obscurity in the claim term" the Federal Circuit imposes "demanding standards for displacing . . . an ordinary meaning . . . [because] the terms at issue have so clear an ordinary meaning that a skilled artisan would not be looking for clarification in the specification." *Ancora Techs., Inc. v. Apple, Inc.*, 744 F.3d 732, 738 (Fed. Cir. 2014). *See also Straight Path IP Grp., Inc. v. Sipnet EU S.R.O.*, 806 F.3d 1356, 1361 (Fed. Cir. 2015) (where the claim language "leav[es] no genuine uncertainties on interpretive questions . . . it is particularly difficult to conclude that the specification reasonably supports a different meaning."); *Info-Hold,*

*Inc. v. Applied Media Techs. Corp.*, 783 F.3d 1262, 1265–66 (Fed. Cir. 2015) (assigning "transmit" its plain and ordinary meaning because there was "no linguistic ambiguity to resolve" and the "specification confirms the term's neutrality"). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Phillips*, 415 F.3d at 1315 (quoting *Vitronics*, 90 F.3d at 1582). In the specification, a patentee may define a term to have a meaning that differs from the meaning that the term would otherwise possess. *Id.* at 1316.

There are only two situations in which the Federal Circuit departs from the ordinary meaning of a claim term that appears "plain on its face": "(1) when a patentee sets out a definition and acts as his own lexicographer, or (2) when the patentee disavows the full scope of the claim term either in the specification or during prosecution." *Info-Hold*, 783 F.3d at 1265–66. *See also Straight Path*, 806 F.3d at 1361 ("[U]nless there is a disclaimer or redefinition . . . the proper construction of any claim language must, among other things, stay true to the claim language, and . . . avoid giving invention-defining effect to specification language included for other descriptive and enablement purposes").

The standards for finding lexicography and disavowal are "exacting." *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1371 (Fed. Cir. 2014). A disclaimer or disavowal, whether in the specification or prosecution history, requires "clear and unmistakable" statements that limit the claims. *MIT v. Shire*, 839 F.3d at 1118 (finding no prosecution history disclaimer); *GE Lighting Solutions, LLC v. AgiLight, Inc.*, 750 F.3d 1304, 1309 (Fed. Cir. 2014)(finding no specification disclaimer). *See also Avid Tech., Inc. v. Harmonic, Inc.*, 812 F.3d 1040, 1045 (Fed. Cir. 2016) ("Where the alleged disavowal is ambiguous, or even amenable to multiple reasonable

interpretations, we have declined to find prosecution disclaimer.")(internal citations omitted).[1] Similarly, "to act as its own lexicographer, a patentee must clearly set forth a definition of the disputed claim term other than its plain and ordinary meaning and must clearly express an intent to redefine the term." *Hill-Rom*, 755 F.3d at 1371 (holding patentee was not lexicographer).

### B. Means Plus Function Claims – 35 U.S.C. § 112(f)

Courts construe means-plus-function claims differently than other claims. A means-plus-function claim is one that contains an element "expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof." 35 U.S.C. § 112(f). Courts limit means-plus-function claims to cover "the corresponding structure, material, or acts described in the specification and equivalents thereof." *Id.*

The first step in a § 112(f) analysis, the court must observe whether the claim includes the word "means." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1364 (Fed. Cir. 2013). If the word "means" is present, the Federal Circuit presumes that § 112(f) applies; if the word "means" does not appear in the claim, the court presumes § 112(f) does not apply. *Id.* Next, the Federal Circuit determines if the applicable presumption was rebutted. *Id.* In cases where the word "means" does not appear in a claim (*i.e.*, presumptively not a means-plus-function claim), the presumption is rebutted only if the claim is shown to "recite[] a function without reciting sufficient structure for performing that function." *Id.*

### C. Prosecution History of the '920 Patent

The '920 Patent received two Office Actions during prosecution. In the January 3, 2024 Office Action, the examiner indicated that claims 2 and 4-5 contained allowable subject matter.

---

[1] The Federal Circuit has found disclaimers based on statements that: (i) describe certain features as "required" for the invention; (ii) indicate "all embodiments" of the invention include certain features; or (iii) "repeatedly disparaged an embodiment." *GE Lighting*, 750 F.3d at 1309.

*January 3, 2024 Office Action at page 6.* In the April 3, 2024 Response to Non-Final Office Action, DET amended independent claim 1 to incorporate features from allowable claim 2. *April 3, 2024 Response to Non-Final Office Action at page 2.* The second Office Action was issued on April 16, 2024 and provided clarification that all of the features from allowable claim 2 needed to be incorporated into independent claim 1 in order for claim 1 to be in condition for allowance. *April 16, 2024 Office Action at page 4.* In the May 31, 2024 Response to Final Office Action, DET amended independent claim 1 to incorporate all features from allowable claim 2. *May 31, 2024 Response to Final Office Action at page 2.* Subsequently, a Notice of Allowance was issued on June 18, 2024. As DET only amended independent claim 1 to incorporate allowable subject matter from claim 2, DET did not present any arguments during the prosecution that would result in prosecution history estoppel.

## IV.    U.S. PATENT NO. 12,048,920 AND THE CLAIMS AT ISSUE

DET accuses DPF of infringing claims 1-5 of the '920 Patent. The '920 Patent was filed on July 12, 2022 and generally relates to a system and process for replacing a core of a diesel emission control device. '920 Patent at 5:24-27. The claims of the '920 Patent recite a system comprising, *inter alia*, a core press station, a piston, a working platform, a control station, a decore shaft, a push plate, a pushout donut, and a collection container. The dependent claims provide additional elements of the claimed system.

The parties have agreed that the fourteen terms/phrases listed below do not require any construction by the Court:

| No. | Claim Term | Agreed Construction |
|---|---|---|
| 1. | "existing core"<br><br>Claim 1 | "a previously used/installed diesel particulate filter positioned within a DECD housing" |
| 2. | "DECD housing"<br><br>Claims 1, 3, 4 | "a structure configured to receive a core" |
| 3. | "core press station"<br><br>Claims 1, 5 | "apparatus that is configured to press a core out of a DECD housing" |
| 4. | "control station"<br><br>Claim 1 | plain and ordinary meaning |
| 5. | "decore shaft connected to the piston"<br>Claim 1 | plain and ordinary meaning applies in conjunction with the proposed construction for decore shaft |
| 6. | "pushout donut demountably connected to the push plate"<br><br>Claim 1 | plain and ordinary meaning applies in conjunction with the proposed constructions for push plate and pushout donut |
| 7. | "collection container connected between the push plate and the pushout donut"<br><br>Claim 1 | plain and ordinary meaning applies in conjunction with the proposed constructions for push plate, pushout donut and collection container |
| 8. | "the collection container configured to receive the existing core"<br><br>Claim 1 | plain and ordinary meaning applies in conjunction with the proposed construction for collection container |
| 9. | "movement of the piston is configured to push the existing core out of the DECD housing"<br><br>Claim 1 | plain and ordinary meaning |
| 10. | "decore shaft portion having a first female aperture configured to connect"<br><br>Claim 2 | plain and ordinary meaning applies in conjunction with the proposed construction for decore shaft |

| No. | Claim Term | Agreed Construction |
|---|---|---|
| 11. | "disposed opposite"<br><br>Claim 2 | plain and ordinary meaning |
| 12. | "first diameter is greater than an inside diameter of the DECD housing"<br><br>Claim 3 | plain and ordinary meaning |
| 13. | "two-handed sensor system for activation control of the core press station"<br><br>Claim 5 | "system for activation control of the core press station that requires use of an operator's two hands on sensors to activate the core press station" |
| 14. | "configured to require two hands of an operator to activate the core press station"<br><br>Claim 5 | "configuration requiring use of an operator's two hands on sensors to activate the core press station" |

The Parties dispute construction of the following claim terms, phrases, or clauses contained in the asserted claims of the '920 Patent.

| No. | Claim Term | DET's Proposed Construction or Position | DPF's Proposed Construction or Position |
|---|---|---|---|
| 1. | "working platform"<br><br>Claim 1 | "a structure that provides support for a DECD housing during removal of a core" | "a structure that provides support to set a DECD housing and to set a push plate" |
| 2. | "decore shaft"<br><br>Claims 1, 2 | "a shaft configured to connect to a piston" | "an apparatus having a rod with an end orthogonally coupled to a circular disk for removing a core" |
| 3. | "push plate"<br><br>Claim 1 | "a plate configured to allow a core to pass therethrough" | "a disk configured to allow an existing core to pass therethrough" |

9

| No. | Claim Term | DET's Proposed Construction or Position | DPF's Proposed Construction or Position |
|---|---|---|---|
| 4. | "push plate positioned upon the working platform"<br><br>Claim 1 | No construction necessary; plain and ordinary meaning applies in conjunction with the proposed constructions for push plate and working platform | "a disk configured to allow an existing core to pass therethrough and is secured in place onto the working platform" |
| 5. | "pushout donut"<br><br>Claim 1 | "a structure configured to receive an end of a DECD housing" | "an apparatus with a central hole configured to allow an existing core to pass through said central hole" |
| 6. | "collection container"<br><br>Claim 1 | No construction necessary; plain and ordinary meaning applies. | § 112, ¶6: "a bag" |
| 7. | "decore engagement plate"<br><br>Claim 2 | "a plate configured to contact a core for removal from a DECD housing" | "a portion of the decore shaft that is a circular disk" |
| 8. | "second diameter is approximately equal to an inside diameter of the DECD housing"<br><br>Claim 4 | No construction necessary; plain and ordinary meaning applies | § 112(a): "approximately" is indefinite<br><br>"second diameter is equal to an inside diameter of the DECD housing" |

## V.    THE COURT SHOULD ADOPT DET'S PROPOSED CLAIM CONSTRUCTIONS

| Claim Term | DET's Proposed Construction |
|---|---|
| 1.   "working platform" | "a structure that provides support for a DECD housing during removal of a core" |

DET's proposed construction for "working platform" is "a structure that provides support for a DECD housing during removal of a core". The Parties' proposed constructions primarily differ because DPF proposes a definition that is unduly narrow and not supported by the specification. The specification describes a "working platform" as being formed by one or more lower cross beams. '920 Patent at 5:58-64. Figures 2A-2C illustrate an embodiment of a working platform 116. In describing a core insertion process, the specification states that working platform

10

116 supports structures, such as a pushout donut 182 and a support plate 802. *Id.* at 9:31-34. The specification, through the written description and the figures, demonstrates that the claimed "working platform" is "a structure that provides support for a DECD housing during removal of a core."



FIG. 2A

11



FIG. 2B                    FIG. 2C

DPF's proposed construction would improperly limit "working platform" to include features that are not discussed or described in the specification, and that are not shown in the figures. In particular, DPF's proposed construction goes beyond the intrinsic record to improperly limit "working platform" to be "a structure that provides support *to set a DECD housing and to set a push plate*." Emphasis added.

| Claim Term | DET's Proposed Construction |
|---|---|
| 2.  "decore shaft" | "a shaft configured to connect to a piston" |

DET's proposed construction for "decore shaft" is "a shaft configured to connect to a piston." Again, the Parties' proposed constructions primarily differ because DPF proposes a definition that is unduly narrow and not supported by the specification. The specification describes

12

a decore shaft as being "designed to remove cores from the DECD housings [and] contains a decore shaft portion 152 where one end is coupled to a decore engagement plate 154." *Id.* at 3:23-28. Figure 3A illustrates an embodiment of decore shaft 150. The specification, through the written description and the figures, demonstrates that the claimed "decore shaft" is "a shaft configured to connect to a piston."



FIG. 3A

DPF's proposed construction would improperly limit "decore shaft" to include features that are not required by the intrinsic record. In particular, DPF's proposed construction goes beyond the intrinsic record to improperly limit "decore shaft" to be "an apparatus having a rod with an end orthogonally coupled to a circular disk for removing a core." There is no support in the specification that would support limiting "decore" shaft to being "a rod" or to include "an end orthogonally coupled to a circular disk." The plain ordinary meaning of shaft is broader than "rod." Nothing the specification suggests that "decore shaft" should be interpreted to mean "rod." Furthermore, the word "orthogonal" does not appear in the specification. Limiting "decore shaft" to require an orthogonally connected circular disc is wholly unsupported by the specification.

| Claim Term | DET's Proposed Construction |
|---|---|
| 3.  "push plate" | "a plate configured to allow a core to pass therethrough" |

DET's proposed construction for "push plate" is "a plate configured to allow a core to pass therethrough."  Figures 3B and 6Q illustrate a push plate 180.  The specification describes an embodiment of push plate 180 as comprising an internal aperture to pass an existing core therethrough.  *Id*. at 8:32-35.



FIG. 3B                    FIG. 6Q

DPF's proposed construction would improperly limit "push plate" to include features that are not required.  In particular, DPF's proposed construction improperly introduces the limitation that a "push plate" must be a disk.  Nothing in the intrinsic record supports that the "push plate" is a disk.  While not limiting, Figures 3B and 6Q illustrate embodiments of push plate 180 that are not disk shaped.

14

| Claim Term | DET's Proposed Construction |
|---|---|
| 4. "push plate positioned upon the working platform" | No construction necessary; plain and ordinary meaning applies in conjunction with the proposed constructions for push plate and working platform |

DET proposes that no additional construction is necessary beyond the construction of "push plate", because the phrase "push plate positioned upon the working platform" merely adds a simple description of the location of the push plate relative to the working platform. DPF's proposed definition includes its definition for "push plate" and adds additional limitations. DPF's definition is improper for the same reasons discussed above relative to the terms "push plate" (Claim Term 3) and "working platform" (Claim Term 1).

| Claim Term | DET's Proposed Construction |
|---|---|
| 5. "pushout donut" | "a structure configured to receive an end of a DECD housing" |

DET's proposed construction for "pushout donut" is "a structure configured to receive an end of a DECD housing." The specification describes a "pushout donut" as being sized to compliment an outside diameter of a core. *Id*. at 8:17-20. Figures 3B, 6I, and 6Q illustrate embodiments of a pushout donut 182.



FIG. 3B

FIG. 6Q



FIG. 6I

DPF's proposed construction unduly narrows "pushout donut" to require "a central hole". Nothing in the intrinsic record requires a hole that is central to the pushout donut. In describing an embodiment of a pushout donut 182, the specification states that pushout donut 182 comprises an internal aperture. *Id*. at 8:36-41. The specification does not describe the identified embodiment of pushout donut 182 as comprising a "central" aperture, nor does the specification describe any embodiment of pushout donut 182 as requiring a "central hole" as proposed by DPF.

| Claim Term | DET's Proposed Construction |
|---|---|
| 6.  "collection container" | No construction necessary; plain and ordinary meaning applies. |

DET proposes that no construction for "collection container" is necessary and it should be accorded its plain and ordinary meaning. The specification describes a "collection container" as being configured to receive an existing core that has been pushed out of a DECD housing. *Id*. at 8:66-9:9. The specification identifies a "a plastic collection bag" (*Id*. at 6:38-41), "a collection bag" (*Id*. at 8:9-12), and "a bag" (*Id*. at 9:4-9) as a non-limiting examples of a "collection container." As there is no ambiguity as to the meaning of "collection container", there is no reason to construe the term beyond its plain and ordinary meaning.

DPF's proposed construction contradicts itself, and otherwise impermissibly attempts to narrow the term to "a bag." The proposed construction is contradictory in that DPF both asserts that no structure is provided, but then further asserts that the term should be construed to mean "a bag." By its own admission, DPF has identified an exemplary embodiment that comprises structure. The contradiction of DPF's position notwithstanding, to limit "collection container" to "a bag" would not comport with the long-held tenet of claim construction that claims are not limited to a single embodiment disclosed in the specification. *Electro Med. Sys., S.A. v. Cooper Life Scis., Inc.*, 34 F.3d 1048, 1054 (Fed. Cir. 1994). The specification is clear that the identification of "a plastic collection bag" ('920 Patent at 6:38-41), "a collection bag" (*Id*. at 8:9-12), and "a bag" (*Id*. at 9:4-9) are merely examples of collection containers (e.g., the specification uses the qualifier "such as").

| Claim Term | DET's Proposed Construction |
|---|---|
| 7. "decore engagement plate" | "a plate configured to contact a core for removal from a DECD housing" |

DET's proposed construction for "decore engagement plate" is "a plate configured to contact a core for removal from a DECD housing." The specification describes a "decore engagement plate" as pushing an existing core out of a DECD unit as a piston connected to a decore shaft moves in a downward direction. *Id*. at 8:64-9:3. As a non-limiting example, the specification notes that an embodiment of decore engagement plate 154 comprises a circular disk. *Id*. at 6:28-30.

DPF's proposed construction attempts to limit "decore engagement plate" to a single embodiment discussed in the specification regarding a circular disk, which is impermissible. *Electro Med. Sys., S.A. v. Cooper Life Scis., Inc.*, 34 F.3d 1048, 1054 (Fed. Cir. 1994).

| Claim Term | DET's Proposed Construction |
|---|---|
| 8. "second diameter is approximately equal to an inside diameter of the DECD housing" | No construction necessary; plain and ordinary meaning applies |

DET proposes that no construction is necessary beyond the plain and ordinary meaning of the phrase "second diameter is approximately equal to an inside diameter of the DECD housing" as the phrase would, in light of the specification, be understood by one of skill in the art. DPF asserts that the identified phrase is undefined and indefinite, yet, recognizing that the term is easily understood in light of the specification, also proffers a proposed construction. The specification describes in detail, and illustrates via Figures 6A-6Q, a process for removing an existing core from a DECD housing. In reference to Figure 6K, the specification states "In step 510 of the core removal process 500 (FIG. 5A), the DECD unit is positioned on top of the pushout donut 182 and aligned with the aperture of the pushout donut 182 as indicated in FIG. 6J. In other words, the inside diameter of the DECD housing is aligned with the inside diameter of the pushout donut aperture from underneath as indicated in FIG. 6K." '920 Patent at 8:42-48.



Edges are lined up

## FIG. 6K

In reference to Figure 6Q, the specification states "The pushout donut 182 comprising a second internal aperture 628 having a second diameter D2 configured to pass the existing core

therethrough; wherein the second diameter D2 is approximately equal to the inside diameter (I.D.)

of the DECD housing 610." *Id*. at 8:36-41.



# FIG. 6Q

In light of the written description and Figures (e.g., Figures 6K and 6Q), the meaning of

the phrase "second diameter is approximately equal to an inside diameter of the DECD housing"

is easily understood by one of skill in the art.

## VI.    CONCLUSION

For the above stated reasons, DET respectfully requests that the Court construe the disputed

terms in accordance with DET's proposed constructions.

Dated: September 22, 2025                    Respectfully submitted,

  By: */s/ Lekha Gopalakrishnan*
M. Ross Cunningham
State Bar No. 24007062
rcunningham@cunninghamswaim.com
Alex Whitman
State Bar No. 24081210
awhitman@cunninghamswaim.com
Bryan S. David
State Bar No. 24031989
bdavid@cunninghamswaim.com
CUNNINGHAM SWAIM, LLP
4015 Main Street, Suite 200
Dallas, Texas 75226
Telephone: (214) 646-1495
Facsimile: (214) 613-1

Lekha Gopalakrishnan
State Bar No. 24027332
lgopalakrishnan@jw.com
William Allen Moon
State Bar No. 24065782
wamoon@jw.com

JACKSON WALKER LLP
2323 Ross Avenue, Suite 600
Dallas, Texas 75201
Telephone: 214-953-5764
Facsimile: 214-953-5822

**ATTORNEYS FOR DET DIESEL
EMISSION TECHNOLOGIES, LLC
AND SYNERGY CATALYST, LLC**

## **CERTIFICATE OF SERVICE**

In accordance with Federal Rule of Civil Procedure 5, the undersigned hereby certifies that all counsel of record are being served with a copy of this document via the Court's CM/ECF notification system by email on this 22nd day of September 2025.

*/s/ Lekha Gopalakrishnan*
Lekha Gopalakrishnan

21