**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **DPF ALTERNATIVES, LLC, ET AL., PLAINTIFFS/COUNTER-DEFENDANTS,** | § | |
| **V.** | § | **CASE NO. 3:24-CV-1953-B** |
| **DET DIESEL EMISSION TECHNOLOGIES, LLC, DEFENDANTS/COUNTER-PLAINTIFF/ THIRD PARTY PLAINTIFF,** | § | |
| **SYNERGY CATALYST, LLC, ET AL., DEFENDANTS,** | § | |
| **COLLATERAL RESOURCES, LLC D/B/A ET AL., THIRD PARTY DEFENDANTS.** | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b) and the District Judge's *Order of Reference*, Doc. 242, *Defendants' Motion for Preservation Order, Temporary Restraining Order and/or Preliminary Injunction to Preserve Evidence*, Doc. 238, is now before the Court. Because Defendants have not met their burden of showing that a preservation order or temporary restraining order is necessary, the motion should be **DENIED.**

## I. BACKGROUND

This action is one of five related cases arising from disputes concerning Defendant DET Diesel Emission Technologies, LLC ("DET") and Synergy Catalyst, LLC's "Recore" technology. Here, the Recore technology is subject to competing patent claims, including

infringement claims asserted by DET and non-infringement and fraud claims asserted by Plaintiff DPF Alternatives LLC ("DPF"), and its franchisees and affiliates (collectively, the "DPF Parties"). Doc. 122, *passim;* Doc. 128 at 16.

In their operative counterclaims, DET and various third-party counterclaimants allege that DPF and its franchisees obtained unauthorized access to DET's proprietary "Recore" equipment, methods, products, and processes and used that information to develop a derivative technology and competing method known as "New Core." Doc. 128 at 16, 22-23. Based on these allegations, DET and the remaining counterclaimants assert claims for direct and contributory patent infringement under 35 U.S.C. § 271 and trade secret misappropriation under 18 U.S.C. § 1836 and Chapter 34A of the Texas Civil Practice and Remedies Code. Doc. 128 at 23-53.

During discovery, DET served a Rule 34 request seeking inspection of the New Core technology and related tangible items. *See* Doc. 237 at 3-7 [DET's First Req. for Inspection]. In response, the DPF Parties have refused to provide inspection, instead asserting that they have no equipment, technical documentation, test samples, work product, or output to produce for inspection. *See* Doc. 237 at 12-17 [DPF's Resp.]. On July 17, 2026, DET moved to compel the DPF Parties to produce the New Core technology and related documents for inspection, testing, photographing, and related reasonable examination. Doc. 235, *passim.* In conjunction with that motion, DET also filed the instant motion for a preservation order or, alternatively, a temporary restraining order prohibiting Plaintiff and its related parties from destroying altering, transferring, or otherwise placing beyond their possession or control any iteration of the New Core technology. Doc. 238, *passim.*

## II. Applicable Law

Although neither the federal rules nor the Fifth Circuit have delineated the appropriate standard for evaluating requests concerning the preservation of evidence, courts within this district have construed such requests as akin to those seeking an injunctive remedy. *See Madden v. Wyeth*, No. 3:03-cv-167, 2003 WL 21443404, at *1 (N.D. Tex. Apr. 16, 2003) (Kaplan, J.) ("A motion to preserve evidence is an injunctive remedy and should issue only upon an adequate showing that equitable relief is warranted.") (citations omitted); *Cook v. City of Dallas*, No. 3:12-cv-3788, 2012 WL 1391445, at *3 (N.D. Tex. Nov. 9, 2012) (Solis, J.) (concluding that a preservation order is "akin to a preliminary injunction preventing the destruction of evidence."). Courts adopting this approach therefore apply the conventional four-factor analysis, under which the movant must establish:

> (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) [that] the threatened injury outweighs any harm that will result to the non-movant if the injunction is granted; and (4) the injunction will not disserve the public interest.

*Cook*, 2012 WL 13191455, at *4 (quoting *Ridgely v. FEMA*, 512 F.3d 727, 734 (5th Cir. 2008)).

Other district courts, however, have held that "the four-factor test for injunctive relief is not the appropriate test for evaluation motions to enter preservation orders." *Legacy of Life, Inc. v. Am. Donor Servs., Inc.*, No. SA-6-CA-802, 2006 WL 8435984, at *2 (W.D. Tex. Sept. 21, 2006); *see also Capricorn Power Co. v. Siemens Westinghouse Power Corp.*, 220 F.R.D. 429, 433 (W.D. Pa. 2004) (concluding that the four-prong test is not "completely appropriate" when examining the need for a preservation order). Instead, several of these courts have applied a three-part test that examines:

> (1) the level of concern the court has for the continuing existence and maintenance of the integrity of the evidence in question in the absence of an order directing

> preservation of the evidence; (2) any irreparable harm likely to result to the party seeking the preservation of evidence absent an order directing preservation; and (3) the capability of an individual, entity, or party to maintain the evidence sought to be preserved, not only as to the evidence's original form, condition or contents, but also the physical, spatial and financial burdens created by ordering evidence preservation.

*Legacy*, 2006 WL 8435984, at *2 (citing *Capricorn*, 220 F.R.D. at 433-44).

## III. ANALYSIS

DET maintains that the three-part test is the appropriate analysis to apply under the instant circumstances. Doc. 239 at 6-7. The Court, however, need not determine which standard governs because DET has not demonstrated an imminent harm or threat sufficient to necessitate entry of a preservation order. *See Legacy,* 2006 WL 8435984, at *2 (observing that each approach requires a demonstration of necessity); *Campbell v. City of El Paso*, No. 25-cv-372, 2026 WL 964380, at *1 (W.D. Tex. Apr. 8, 2026) (Berton, J.) (describing various standards but noting that "at a minimum, the party seeking a preservation order must demonstrate that the evidence is in some danger of being destroyed absent a court order.").

DET argues that the inconsistent positions taken by the DPF Parties as to the existence and availability of the New Core Technology raises "serious concern[s]" of spoliation. Doc. 239 at 8. Specifically, DET points out that DPF's Second Amended Complaint affirmatively alleged that it made its New Core system available to its franchisees in January 2025 and that deposition testimony from DPF's principal confirms its ongoing possession of the technology. Doc. 122 at 16; Doc. 240 at 89-90 [Laverty Depo. at 28:17-30:5]. Yet despite these allegations, DET notes that the DPF Parties have refused to produce the technology for inspection on grounds that there is no such evidence in their possession, custody, or control. Doc. 239; Doc. 240 at 108-10. DET further contends that since taking this position, DPF has begun informing its customers that it is

no longer offering the New Core product or service. Doc. 239 at 8 (citing Doc. 240 at 113-14 [Shaw Decl.]). According to DET, these circumstances give rise to a "very strong probability" that the DPF Parties are actively moving, concealing, or destroying the relevant New Core technology. Doc. 239 at 8.

The Court disagrees. Although the DPF Parties' inconsistent positions may bear on whether responsive evidence exists within their possession, the purported inconsistencies do not establish that relevant evidence either has been or is in danger of being destroyed. Rather, any concern regarding spoliation rests solely on DET's inference that the DPF Parties' refusal to produce the New Core materials can only be explained by the conclusion that they are currently destroying, transferring, or otherwise altering such evidence. Doc. 239 at 11. But DET identifies no evidence—apart from its assumptions—suggesting that the DPF Parties have destroyed or transferred any relevant evidence, including evidence related to the New Core technology.

Mere speculation that the DPF Parties *may* destroy relevant evidence is not sufficient to justify entry of a preservation order. *See Cook*, 2012 WL 13191445, at *4 (denying request for preservation order where plaintiffs had not shown "beyond a general suspicion that [d]efendants and their agents may be intentionally or unintentionally destroying relevant documents"); *Madden,* 2003 WL 21443404, at *1 (finding that movants failed to show substantial threat where they pointed to the "mere 'possibility'" that relevant documents may be destroyed); *cf. Tracfone Wireless, Inc. v. King Trading, Inc.*, No. 3:08-cv-0398, 2008 WL 918243, at *1 (N.D. Tex. Mar. 13, 2008) (Kaplan, J.) (granting request for preservation order in part because plaintiffs demonstrated that defendant had, in other cases, destroyed evidence, and plaintiffs' private investigator confirmed destruction after filing of complaint). Because DET has not established

that equitable relief is warranted, it fails to satisfy either standard applicable to such requests. *Madden,* 2003 WL 21443404, at *1

Nevertheless, the Court reminds the parties that "*all litigants* are obligated to take appropriate measures to preserve documents and information which are reasonably calculated to lead to the discovery of admissible evidence and likely to be requested during discovery." *Cook,* 2012 WL 13191445, at *4 (emphasis in original). "Moreover, lawyers have an affirmative *duty* to advise their clients of pending litigation and the requirement to preserve potentially relevant evidence." *Id.* (emphasis in original). Because all litigants and lawyers are expected to adhere to these obligations, the Court should decline to enter a preservation order absent a concrete showing that evidence will be lost or destroyed. Accordingly, DET's request for such an order should be **DENIED.**

**SO RECOMMENDED** on August 7, 2026.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must identify the finding or recommendation to which objection is made, the basis for the objection, and the place in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).